[Crim. No. 1193. Third Appellate District.—May 7, 1932.]

THE PEOPLE,. Respondent, v. MUKAND SINGH et al., Appellants.

J. Oscar Goldstein for Appellants.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PRESTON, P. J.—On October 29, 1931, the district attorney of Butte County filed an information in the Superior Court of Butte County, charging the defendants Mukand Singh, Amer Singh and Indar Singh (sometimes known as Needham Singh) with the crime of assault with a deadly weapon with intent to commit murder, alleged to have been committed on the eighth day of October, 1931, near the town of Richvale, Butte County, California. On November 18, 1931, in the same court, the district attorney filed an information charging the defendant Sundar Singh with the same offense, alleging it to have been committed at the same time and place and in company with the other defendants just named. The two actions were consolidated for trial, and were tried upon the informations

as filed, and after such trial, the defendants Mukand Singh, Amer Singh and Sundar Singh were convicted of the offense set forth in said information, and the defendant Indar Singh (sometimes known as Needham Singh) at the same time, was found guilty of the offense of assault with a deadly weapon. This appeal is prosecuted by the defendants herein, jointly, from the judgment of conviction as made, entered and rendered against each of them.

Little need be said of the facts offered in support of the charge. It is not contended that the evidence was not sufficient to sustain the conviction.

It is to be noted, however, that defendants and each of them strictly maintained innocence throughout. The defense was alibi and much evidence was offered in support thereof. As the names might indicate the defendants are natives of Hindustan, as was the prosecuting witness. The record discloses the existence of a long-standing feud between the witnesses for the People and the defendants, and while witnesses for the People were positive in their identification of the defendants and the presence of all and each of them at the scene of the alleged offense, yet the denial of the defendants was equally positive and supported by much apparently disinterested and credible testimony. However, it is not our province to characterize the testimony or to comment upon its credibility or worth, inasmuch as the verdict of the jury concludes this question. Our purpose is merely to point out the existence of a sharp conflict which could have been determined either way. It may be conceded that if the alleged error relied on by appellants was actually error, it must have been error of such a nature as would have caused great prejudice to the rights of the defendants.

At the trial the People called as a witness one C. I. Bennington. Bennington is and at all of the times referred to herein was an attorney at law engaged in practice in Oroville, Butte County. Over the strenuous objections of appellants, urged sufficiently at all times, Bennington was allowed to testify that he had held a conversation with Mukand Singh, one of the defendants, in the county jail shortly after the latter's arrest; that at that time and place said defendant had confessed to the witness that he, said defendant, together with two of his co-defendants,

namely Amer Singh and Sundar Singh, had committed the offense with which they were charged. Further the witness testified that at the same time and place the said Mukand Singh had disclosed plans to bribe witnesses to support an alibi and had also suggested to the witness the plan of bribing one or two jurors at the trial.

The ground of appellants' objection to the testimony of Bennington was and is that at the time of the alleged conversation, the relation of attorney and client existed between Bennington and Mukand Singh and, therefore, all conversations between them were confidential and privileged.

The history of the relationship between Bennington and the defendants or any of them may now be detailed. We repeat Bennington is an attorney at law residing in Oroville, Butte County. The crime charged to defendants was committed in the said Butte County. On the day after Mukand Singh, one of the defendants, was arrested the conversation between him and Bennington is alleged to have occurred. This conversation took place in the county jail at Oroville. Thereafter and within a few days, three of the defendants, being all excepting Sundar Singh, were taken before a justice of the peace of Butte County on proceedings referred to throughout the record as an arraignment, but being in fact proceedings relative to fixing the date for the preliminary examination.

The record of the justice court proceedings shows that Bennington appeared as counsel for the three defendants then in custody and was actively participating in the proceeding on behalf of said defendants. The said Bennington requested that the record show that he appeared as attorney for the said defendants. Sundar Singh had not then been arrested.

The first question discussed between counsel was on the matter of bail. Bennington, representing the defendants, argued for a reduction of bail. This question being disposed of, the said Bennington, on behalf of the defendants, waived the reading of the complaint, entered a plea of not guilty and requested the setting of a date for hearing. He then discussed the setting date and consulted his convenience in stipulating a satisfactory date for hearing. Throughout the entire record Bennington acted as attorney for the defendants. Thereafter, at the preliminary hearing,

Bennington was entered of record as attorney for defendants, though the transcript of the said hearing does not show that he participated further than his mere presence.

Notwithstanding the foregoing record, Bennington testified that he never was the attorney for any of the defendants. His version of the matter may now be related. One Kishan Singh, a countryman of the defendants, first approached Bennington with reference to the case. A tentative arrangement was made concerning fees to the end that at a designated time, but a few days distant, Kishan Singh was to make a payment of some one thousand dollars as a fee. However, without awaiting the payment, Bennington commenced acting in behalf of the defendants.

It is Bennington's claim that his employment was to be in the interests of Amer Singh and that nothing was said about Mukand Singh. Yet he visited Mukand Singh in the jail and had the conversation concerning which he testifies. According to Bennington's testimony, Mukand Singh stated that he, Mukand Singh, accompanied by Amer Singh and Sundar Singh went down to the shack of the prosecuting witnesses and fired several shots and thought they had killed everyone there; that thereafter these defendants went to Stockton, having the auto at all times running and prepared for quick flight. Bennington detailed further conversations to the effect that Mukand Singh suggested a plan of defense consisting mainly in the procuring of perjured testimony to support an alibi and the bribing of one or two jurors.

We think that the admission of this testimony from the witness Bennington was prejudicial and reversible error. Whatever may have been the disappointment of Bennington in not receiving his fee, he had fastened upon himself the status of attorney for these three defendants. His visits to them in the jail under a contract of employment, his appearance as attorney of record and participation in all of the proceedings prior to the arraignment in the superior court left his position clearly defined. Conceding that he had the right, for nonpayment of fees or for any other good reason, to repudiate the employment and be relieved from further obligation, he had no right to violate any confidence reposed in him while acting as counsel.

We state with some pride that our profession has been singularly free from instances of this sort. From time immemorial the position of an attorney has been one of signal honor, reflecting much in the progress and strength of our jurisprudence. The dignity of the lawyer has been recognized in every movement against oppression and in every step for better government. Approval of conduct here met would go a long way toward the undoing of the accomplishment of the past and relegate the lawyer to the ranks of the charlatan and mountebank. No amount of sophistry or platitude can disguise the exact relationship between Bennington and these defendants with whom he consulted and for whom he appeared. If we concede that he at first was to represent Amer Singh yet in the course of that employment he did confer with Mukand Singh, a co-defendant jointly charged and a defendant whose defense was essentially a part of the defense of Amer Singh. Bennington represented to Mukand Singh that he was attorney for Amer Singh and it was all the same. Bennington's own testimony was that he wanted to be their attorney if they would put up the money. In his own words: "I attempted to be their attorney with the understanding that Kishan Singh was to bring the thousand dollars but I was not their attorney until I was paid. . . . I appeared at the arraignment with the understanding that on that date they would bring me the thousand dollars they owed me and if they brought it I would go on with the case just like any lawyer."

Nothing further need be said. We may quote from *Ex parte McDonough,* 170 Cal. 231 [Ann. Cas. 1916E, 327, L. R. A. 1916C, 593, 149 Pac. 566, 567], as follows: "However desirable it may be to obtain proofs sufficient to insure the conviction of all persons who commit crimes of the character of those under investigation, and it will readily be conceded that it is most desirable, such proofs may not be obtained from those who are forbidden by our law to give them. In regard to the obligation of an attorney to his client in this respect, our statutes are very explicit, making it his duty 'to maintain inviolate the confidence, and at every peril to himself, to preserve the secrets of his client'."

Indeed, at the trial in the court below, the special prosecutor, in offering the testimony conceded as follows: "At first blush it would appear that the statements made by Mukand Singh to Mr. Bennington would not be admissible." We agree with this statement and go further to add that each succeeding blush more clearly reveals the inadmissibility.

 Respondent argues that if we hold the admission of this testimony to have been erroneous, yet the error is one affecting the rights of Mukand Singh only and constitutes no ground for reversal of the judgments against the other defendants. This may argue out from an academic viewpoint. Yet all of these defendants were being tried together for the same crime. The theory of the prosecution was a joint act or conspiracy and the defendants were united in a joint defense resting upon the claim of alibi. It needs little argument to demonstrate that when by incompetent and prejudicial testimony the defense of three of them is totally nullified, the remaining defendant's claim is seriously impaired.

The statement alleged to have been made to Bennington by Mukand Singh, it is claimed can affect only that defendant. The trial court so instructed the jury, but this alleged conversation goes beyond the rule of confession or admission. Technically, and in fact, the statement was neither a confession nor an admission, inasmuch as in both of these cases a statement is made for the express purpose of being binding. When one confesses an act there is something voluntary in the act itself and this is true likewise of an admission. In a confession, one may, in the very nature of things, bind only himself, but, where there is no intent to admit or confess, the situation may become quite different. The statement here made differs from a confession or admission in that it was a disclosure of plans for a defense rather than intended as a means of admitting guilt.

The testimony was offered without qualification and was received as a part of the prosecution's case as against all of the defendants.

Evidence that one defendant was attempting on behalf of himself and associates to build up a fake alibi and correct a jury necessarily affected the joint defense.

The entire theory of the prosecution was on a joint enterprise in which all of the defendants participated and under the facts as presented and argued, all were equally guilty.

We may diagram the situation from the record. The witnesses for the prosecution all testified that the four defendants were present and active participants in the assault, being the aggressors therein. The defendants, in turn, denied being present and each defendant set forth his presence at a different place. Different witnesses were called by each defendant in support of his own alibi. There thus arose what might be termed a series of conflicts, being a separate conflict between the array of the prosecution and each separate defendant's witnesses. The identification by the People's witnesses, being so complete and detailed, must stand or fall as to all the defendants or none.

For instance, the jury in weighing the evidence could not reasonably conclude that the People's witnesses were truthful in asserting the presence of one defendant and wilfully false in asserting the presence of another. Therefore, when through the incompetent and inadmissible testimony, the veracity and credibility of the prosecution's witnesses were affirmed by the confession of one of the defendants, it naturally prejudiced the case of the remaining defendants.

If this were a case of a simple voluntary confession our views might be different, but, here, the statements alleged to have been made by Mukand Singh were what might be called superconfession. The statement of a client to his attorney is much in the nature of a confession to a clergyman. The very nature of the transaction clothes it with a high degree of sanctity. As a matter of common experience, a statement either to counsel or confessor imports a cleaning out of the soul with the utmost of completeness and is presumed to reflect the fact in its truest detail.

In permitting the judgments herein to stand, we would be sacrificing a part of the body of the law itself in the fatuous hope of preserving the social fabric through a process of destroying the fiber.

The judgments should be reversed and a new trial granted to each and all of the defendants. Such is the order.

Thompson (R. L.), J., and Plummer, J., concurred.