[Crim. No. 25371. Second Dist., Div. Four. Jan. 16, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
JACK LEE PUCKETT, Defendant and Appellant.

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Frederick R. Millar, Jr., and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KINGSLEY, J.**—Defendant was charged with: (count I) assault on a girl under the age of 18 years, with intent to have sexual intercourse with her in violation of Penal Code section 220 (rape); and (count II) attempted burglary with intent to commit rape.[1] After a jury trial, he was convicted

---

[1] "The said JACK LEE PUCKETT is accused by the District Attorney of and for the County of San Luis Obispo, State of California, by this information, of the crime of FELONY, to-wit: Violation of Section 220 of the Penal Code of the State of California committed as follows: That the said JACK LEE PUCKETT on or about the 5th day of February 1974, at and in the County of San Luis Obispo, State of California, did willfully, unlawfully and feloniously make an assault upon Renee Westerhuis, a female person under the age of eighteen years, to-wit, of the age of sixteen years, not then and there the wife of the said defendant, with the intent then and there to have and accomplish an act of sexual intercourse with and upon the said Renee Westerhuis.

"COUNT II

"For a further and separate cause of action, ƨing a different offense from but connected in its commission with the charge set forth in Count I, hereof, the said JACK LEE PUCKETT is accused by the District Attorney of and for the County of San Luis Obispo, State of California, by this Information, of the crime of FELONY, to-wit: Violation of Sections 459 and 664 of the Penal Code of the State of California, committed as follows: That the said JACK LEE PUCKETT on or about the 5th day of February, 1974, at and in the County of San Luis Obispo, State of California, did wilfully, unlawfully and feloniously attempt to enter, in the nighttime, the dwelling house occupied by Renee Westerhuis at 1641 Strand Way, Oceano, County and State aforesaid with the intent then and there and therein unlawfully and feloniously to commit rape."

of: (1) Assault with intent to commit rape; and (2) attempted burglary in the first degree. He has appealed; we reverse.

The evidence for the People was as follows:

On the evening of February 5, 1974, the alleged victim under count I, a girl 16 years of age, had attended night school, leaving the school at approximately 9:15 p.m. She drove to the vicinity of a restaurant where she was employed, parked her car on the street and checked some records at the restaurant. After a few minutes she returned to her car and started to drive home. Shortly, she was aware that the driver of a vehicle behind her was flashing the headlights of the vehicle on and off, in an apparent attempt to attract her attention. While she first thought that the driver was some youthful acquaintance, the persistence of the conduct ultimately frightened her and she drove faster, reaching her home driveway, where she left the car and ran into the house. Defendant, who was the driver of the other vehicle, ran after her and tried to prevent the girl from closing the door. After a few seconds, during which time the girl's mother had joined her, defendant ceased his effort and the door closed. Defendant returned to his vehicle and drove off, but was trapped in a cul-de-sac at the end of the block. He was apprehended.

The defense was that defendant thought that the girl driver was another girl, a friend of his and that he was trying to contact her in order to have a date that evening.

At the trial, the People introduced evidence of a series of events in which defendant had either exposed himself in the presence of girls and women, or had approached girls with improper suggestions. In none of the instances had defendant attempted any physical violence.[2]

I

■ We conclude that count I of the information, as drafted, charged a nonexistent offense. Section 220 of the Penal Code declares it a felony to commit an assault with intent to commit (inter alia) "rape." Prior to 1970, section 261 of the Penal Code, which is the section defining "rape," contained, as subdivision 1 of the section, sexual intercourse with a female under the age of 18 years. As the statute then read, it would have

---

[2]The Irvine episode, discussed in rubric VI of this opinion, did involve possible violence. But all testimony on that subject was stricken and, thus, cannot be relied on to support the judgment here.

been legally possible to commit an assault on a·female with intent to have intercourse regardless of whether the assaulter intended to go so far as an actual rape. But, in 1970, the Legislature amended section 261 by deleting the old subdivision (1) and enacting a new section, section 261.5, creating a new crime denominated "unlawful sexual intercourse." The distinction was carried forward by the amendment of section 264 by the same statute, expressly setting forth different penalty provisions for "rape" and for "unlawful sexual intercourse." We think it plain that, after 1970, "rape," as used in section 220, meant only rape as now defined in section 261 and that it does not include the offense, separately denominated, created by section 261.5.

It follows that there is no such separate crime known to California law as an "assault with intent to commit unlawful sexual intercourse."

## II

If we understand him correctly, the Attorney General contends that "assault with intent to commit rape"—the crime of which defendant was ultimately convicted—was a lesser and included offense within the purported crime charged in count I. The argument is fallacious. To be such a lesser and included offense, all of the elements of that offense must necessarily be included within the elements of the "greater" offense. But section 261.5 can be committed without violating section 261 and, in fact, in the typical case it does not include any of its elements.

## III

A person cannot be convicted of an offense, not charged against him in the indictment or information, whether or not there was evidence at trial to show that he committed the offense. (*In re Hess* (1955) 45 Cal.2d 171, 174 [288 P.2d 5].) Notice of the specific charge against a defendant is the constitutional right of the accused. (*People* v. *Pond* (1955) 44 Cal.2d 665, 676 [284 P.2d 793].) The defendant is entitled to be apprised with reasonable certainty of the nature of the crime charged so that he may prepare his defense and plead jeopardy in future prosecutions. (*People* v. *Romo* (1962) 200 Cal.App.2d 83, 87 [19 Cal.Rptr. 179].) However, under some circumstances, a defendant may be convicted of an offense not charged by name and not a lesser and included offense. The Attorney General argues that the evidence at the preliminary examination showed an attempt to rape and that that showing was sufficient notice to defendant to satisfy the requirements of due process,

citing *People* v. *Collins* (1960) 54 Cal.2d 57 [4 Cal.Rptr. 158]. But *Collins* was distinguished and limited in *People* v. *Leech* (1965) 232 Cal.App.2d 397 [42 Cal.Rptr. 745]. (See also, *People* v. *Ramos* (1972) 25 Cal.App.3d 529, 537, fn. 4 [101 Cal.Rptr. 230]; Witkin, Cal. Criminal Procedure (1973 Supp.) § 543, pp. 475-476.) The distinction made in the two later cases is applicable here.

A second basis for sustaining a conviction for a nonincluded offense is found in *People* v. *Marshall* (1957) 48 Cal.2d 394 [309 P.2d 456], which held that if the information contains (even if surplusage) allegations of the offense, it is charged sufficiently to support a verdict of guilty. (See Witkin, Cal. Criminal Procedure (1963) § 543, pp. 554-555.)

We note that count I of the information, as drafted, charged defendant with a violation of section 220. But the charge went on to allege, in specific language, that the violation involved one specified intent—namely to do the act prohibited by section 261.5. As we have said above, an assault with that intent is not, now, within the meaning of section 220 and the specificity of the allegation prevents any application of *Marshall,* merely because section 220 was mentioned.

Count II of the information herein involved charged defendant with burglary "with intent to commit rape." Although that count also alleged that the burglary was "connected in its commission" with the alleged offense charged in count I, we cannot say that that allegation, in count II, was sufficient under *Marshall* to warn defendant that the People would contend that the intent to commit rape also existed at the time of the assault alleged in count I.

## IV

The confusion interjected into the trial by the People's erroneous theory that unlawful sexual intercourse under section 261.5 is a form of rape, resulted in a total confusion in the instructions. The jury was instructed in the language of CALJIC No. 10.07, on assault with intent to commit rape,[3] and by CALJIC No. 10.10 (1970 rev.), defining

---

[3]"Every person who assaults another with the specific intent to commit rape is guilty of a crime.

"There are two elements of this crime: First, an assault; and second, a specific intent to commit rape. Hence, before you may find the defendant guilty of the crime charged against him [in Count I], you must find from the evidence that he committed an assault, and, further, that in committing such assault he intended to commit rape. The crime of assault with intent to commit rape is complete if an assault is made and if at any moment during the assault the aggressor intends to commit rape upon the woman assaulted, even though he abandons that intention for any reason before the consummation of the act."

unlawful sexual intercourse.[4] No instruction defining rape was given nor was there an instruction on the offense charged—namely assault with intent to have unlawful sexual intercourse. After deliberating for some time, the jury returned with the following question: "Repeat your definition of assault with intent to commit rape involving a minor. Does propositioning a minor legally constitute intent to commit rape even if he does not know she is a minor?" The trial court responded by rereading the original instructions.

Under these circumstances, we cannot know whether the jury concluded that defendant's intent was to commit rape as defined in section 261 (a definition not given them) or that it was to have unlawful sexual intercourse as defined in section 261.5 (as to which the jury was instructed). The probability of confusion requires a reversal on count I.

## V

■ Appellant argues that the convictions on both counts must be reversed or modified because there is insufficient evidence to show that appellant had the intent to commit rape. ■ To support a conviction for assault with intent to commit rape, the prosecution must prove the assault and an intent on the part of defendant to use whatever force is required to complete the sexual act against the will of the victim. (*People v. Cortez* (1970) 13 Cal.App.3d 317, 326 [91 Cal.Rptr. 660].) ■ In the case at bench the evidence was insufficient for such a showing of forcible rape.

In *People v. Greene* (1973) 34 Cal.App.3d 622 [110 Cal.Rptr. 160], defendant therein put his arm around the 16-year-old prosecutrix, claimed he had a gun, and told her not to move, and said, "I just want to play with you." The *Greene* court held that, although defendant's conduct was lewd, there was nothing to show that he intended to commit forcible rape. Similarly, in the case at bench there also was nothing in defendant's conduct to show defendant intended to have sexual inter-

[4]"The crime of unlawful sexual intercourse charged against the defendant in this case is an act of sexual intercourse with a female person who is under the age of eighteen years and who is not the wife of the perpetrator.

"Such a female is incapable of consenting to an act of sexual intercourse as a matter of law. Therefore, in a prosecution for unlawful sexual intercourse, it is no defense that she may have consented to the act of intercourse."

course by force with the prosecutrix. Although defendant's act in running after prosecutrix and pushing her door open is hardly consistent with lawful activity, it is not clear just what appellant's purpose was in chasing the prosecutrix.

The testimony from four prosecution witnesses who testified to other prior incidents involving appellant did not show an intent to rape. That evidence showed only that defendant had a tendency to engage in lewd behavior and lewd conversation and to expose himself. The physical evidence that was properly admitted showed nothing more than sexual motivation.[5] The record falls short of the necessary evidence to support the verdict in count II.

## VI

The People offered some testimony concerning an alleged assault on a girl named Irvine. When the People were unable to produce the alleged victim, the trial court struck the testimony and instructed the jury, at length, to disregard it. Defendant contends that prejudice arose from this episode. Since we reverse on other grounds, and the matter is unlikely to arise on any new trial, we need not determine whether the instructions given (which included CALJIC No. 1.02) removed any possible prejudice.

## VII

■ Defendant argues there is insufficient evidence to sustain a conviction of simple assault. Assault requires proof of an intent to commit a battery and conviction of assault may not be grounded on an intent only to frighten. (*People* v. *Marceaux* (1970) 3 Cal.App.3d 613 [83 Cal.Rptr. 798].) Assault has been defined as an unlawful attempt, coupled with a present ability to commit an injury on the person of another; in other words, an attempt to commit a battery. (*People* v. *Rocha* (1971) 3 Cal.3d 893 [92 Cal.Rptr. 172, 479 P.2d 372]; see *People* v. *Corson* (1963) 221 Cal.App.2d 579 [34 Cal.Rptr. 584].) In the case at bench there is a showing of an attempt to commit a battery. Even though pushing a door cannot be deemed a harmful injury, the pushing of a door which was touching the prosecutrix could be deemed an offensive

---

[5]Appellant had on his person at the time of his arrest a vibrator in the shape of a penis. This too may have shown an interest in unusual forms of sexual behavior but it did not show an intent to rape.

touching and a battery is defined as a harmful *or offensive* touching.[6] (*People* v. *Martinez* (1970) 3 Cal.App.3d 886 [83 Cal.Rptr. 914].)

## VIII

Appellant argues that the trial court abused its discretion in admitting the evidence of prior offenses in which appellant had either exposed himself or accosted young women, making statements with sexual inferences. These prior incidents were admissible to show assault with intent to have sexual intercourse, which was the crime charged against appellant. Prior bad acts may be admitted to show credibility, motive, intent, preparation, plus knowledge, identity, or absence of mistake or accident. (Evid. Code, § 1101; *People* v. *Kelley* (1967) 66 Cal.2d 232, 242-243 [57 Cal.Rptr. 363, 424 P.2d 947].) Prior offenses committed by defendant were held properly admitted into evidence even though there were dissimilarities between the charged offense and the prior offenses, where defendant's conduct was ambiguous. (See *People* v. *Greene, supra,* 34 Cal.App.3d 622, 651.) In the case at bench defendant's conduct in chasing the prosecutrix and pushing the door was ambiguous, and his motives were in question, and the prior offenses tended to show sexual motive or intent on appellant's part.

## IX

Defendant argues that the vibrator shaped like a penis should not have been admitted into evidence. The vibrator showed sexual motivation of an unusual type on defendant's part the night of the incident. Even though not highly probative of an intent to have sexual intercourse, it is also not prejudicial (Evid. Code, § 352), and the defendant was not injured by its admission.

## X

Defendant argues that the trial court erred in refusing instructions on voluntary intoxication. There was evidence that empty beer cans were found near defendant and that he had an odor of alcohol on his breath. Since we reverse on other grounds, we need not here determine whether

---

[6] One reported case holds that the *tort* of battery can be commenced by removing plaintiff's hat. (*Seigel* v. *Long* (1910) 169 Ala. 79 [53 So. 753].)

the evidence of possible intoxication was sufficiently substantial to require the trial court to give the requested instructions.[7]

The judgment is reversed.

Files, P. J., and Dunn, J., concurred.

A petition for a rehearing was denied January 22, 1975, and respondent's petition for a hearing by the Supreme Court was denied March 12, 1975.

---

[7]The problem of instructions on intoxication is extensively analyzed in *People* v. *Cram* (1970) 12 Cal.App.3d 37, 41-45 [90 Cal.Rptr. 393]. As there noted, it is usually wise to give the instruction when requested and avoid the problem, in this court, of attempting to weigh the evidence on the issue.