Opinion
 

 EVANS, J.
 

 Defendant appeals from a judgment entered after a jury found him guilty of first degree robbery and simple assault. He challenges the trial court’s restriction of his cross-examination of an immunized witness.
 

 The robbery and assault occurred in the late evening hours on a Sacramento street as the victim, Jack Congalton, was returning to his residence carrying a pasteboard barrel containing his clean laundry. He had noticed a car, with its left headlight out, circle the block, and then follow him a short distance. The vehicle stopped and a male passenger, later identified as defendant, left the right front passenger seat; and two other occupants shortly thereafter joined him and confronted the victim. A scuffle ensued, the victim’s package of laundry was taken, and he suffered a knife wound requiring 56 stitches.
 

 At trial, Congalton was unable to specify which of his attackers wielded the knife resulting in his wounds. The immunized witness, Cecil Archuleta, supplied that information. The defendant’s attorney sought to cross-examine Archuleta on the nature and content of discussions held with his attorney which occurred before the attorney negotiated the grant of immunity.
 

 During trial, the court had been made aware that on a prior occasion, Archuleta’s attorney had advised the witness to invoke the attorney-client privilege, and accordingly advised Archuleta that he could, if he desired, once again invoke the privilege. Archuleta did so, and the court foreclosed further questioning on that subject.
 

 
 *563
 
 On appeal the defendant mercifully does not challenge the overwhelming sufficiency of the evidence to support the jury verdict. Rather, he presents the question whether a witness may invoke the attorney-client privilege (Evid. Code, § 954), and refuse to testify to his conversations with his attorney which occurred as a prelude to a grant of immunity from prosecution, when that grant of immunity has been made known to the jury. He asserts among other reasons for rejecting the claim of privilege that it denied him the constitutional right to confront the witness and precluded full cross-examination on the subject of the witness’ bias.
 

 Evidence Code section 954, which superseded former Code of Civil Procedure section 1881, subdivision 2, provides in pertinent part, “Subject to Section 912 and except as otherwise provided in this article, the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer if the privilege is claimed by: [¶ (a) The holder of the privilege; ...”
 

 The fundamental policy of the attorney-client privilege is to safeguard the confidential disclosures of the client as well as the advice given by the attorney. The purpose of the privilege is to encourage and promote full disclosure and open discussion of the facts of the case by a client with his counsel. To vitiate that privilege, simply by reason of the extension of a grant of immunity from prosecution, would pervert and frustrate the underlying policies upon which the privilege is founded. (See
 
 People
 
 v.
 
 Vargas
 
 (1975) 53 Cal.App.3d 516 [126 Cal.Rptr. 88];
 
 People
 
 v.
 
 Canfield
 
 (1974) 12 Cal.3d 699, 705 [117 Cal.Rptr. 81, 527 P.2d 633];
 
 American Mut. Liab. Ins. Co.
 
 v.
 
 Superior Court
 
 (1974) 38 Cal.App.3d 579, 593 [113 Cal.Rptr. 561].)
 

 Although it has been suggested to the contrary, the privilege has been and should be liberally construed. In
 
 City & County of S.F.
 
 v.
 
 Superior Court
 
 (1951) 37 Cal.2d 227, 235 [231 P.2d 26, 25 A.L.R.2d 1418], the court stated, “The privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence. Adequate legal representation in the ascertainment and enforcement of rights or the prosecution or defense of litigation compels a full disclosure of the facts by the client to his attorney. ‘Unless he makes known to the lawyer all the facts, the advice which follows will be useless, if not misleading; . . .’ ” (See also
 
 People
 
 v.
 
 Vargas, supra,
 
 53
 
 *564
 
 Cal.App.3d at p. 527;
 
 People
 
 v.
 
 Canfield, supra,
 
 12 Cal.3d at pp. 704-705; Witkin, Cal. Evidence (2d ed. 1966) Witnesses, §§ 794-795, pp. 739-741.)
 

 I
 

 We first dispose of defendant’s contention that the trial court committed prejudicial error by advising the witness of his right to claim the privilege afforded by Evidence Code section 954. The contrary is true. Evidence Code section 916 requires that the trial court exclude on its own motion privileged information when the party from whom the information is sought is not a person authorized to claim the privilege and a party who is authorized to claim the privilege is not a party to the proceeding. Inherent with this mandate is the obligation that the court, when aware that a witness is without advice of counsel and uninformed, inform such witness of his right to assert the privilege. To permit the witness to testify under such known circumstances is error. (See
 
 People
 
 v.
 
 Vargas, supra,
 
 53 Cal.App.3d at p. 527; Jefferson, Cal. Evidence Benchbook, § 35.2, pp. 620-622;
 
 People
 
 v.
 
 Atkinson
 
 (1870) 40 Cal. 284, 286.) The trial court properly exercised its authority and discharged its obligation.
 

 II
 

 Any communication between an attorney and his client is presumed to have been made in confidence, and the opponent of the claim of privilege must establish that the communication was not confidential. (Evid. Code, § 917;
 
 North
 
 v.
 
 Superior Court
 
 (1972) 8 Cal.3d 301, 310 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155].) The defendant does not assert that the original communication was not made in confidence; the main thrust of his argument is that the need for confidentiality has been removed by the grant of immunity from prosecution and the admission by the witness of his complicity in the perpetration of the crime.
 

 In support of his argument, he asserts the need to invade the privacy of the conversation between the attorney and his client in order to expose the witness’ bias against the defendant. The grant of immunity was arranged by Archuleta’s attorney following their consultation. It is likely that the conversation between the two concluded the terms under which Archuleta agreed to testify. Defendant, in his argument against the use of the attorney-client privilege, contends that fundamental principles of social justice demand that help be extended by the courts in such
 
 *565
 
 circumstance to protect a defendant from a possible conviction predicated upon the biased and self-serving testimony of a witness. Concededly, Archuleta’s testimony was most damning. He described the defendant’s knife attack upon the victim and testified that he, Archuleta, by knocking the victim to the ground, probably saved him from further danger at the hand of the defendant. He identified the knife wielder when the victim was unable to do so.
 

 However, his bias was clearly made known to the jury through disclosure of the immunity from prosecution for the crime, and by the very nature of his testimony and his acknowledged participation in the attack.
 

 Under these circumstances, we are not disposed to disturb the fundamental policy considerations which underlie the reason for the privilege. The Supreme Court, long before the establishment of the statutory privilege, acknowledged that such a privilege was founded on grounds of public policy, and that the benefits derived justify any risk that an unjust decision may occur from the suppression of relevant evidence.
 
 (People
 
 v.
 
 Atkinson, supra,
 
 40 Cal. 284.) A review of the record does not reveal any injustice to the defendant resulting from the extension of the attorney-client privilege to Archuleta. His testimony was in part corroborated by defense witness Susan Duran who was present during the robbery and knife attack. She did not observe a weapon in Archuleta’s possession after the attack and did see defendant Flores throw a knife from Archuleta’s vehicle following the attack.
 

 The privilege of confidential communication between client and attorney should not only be liberally construed, but must be regarded as sacred. Courts should not whittle away at the privilege upon slight or equivocal circumstances. The grant of immunity and Archuleta’s testimony admitting his complicity in the crime are not facts of such compelling force to require a waiver of the confidential nature of the attorney-client communication; its confidentiality must be kept inviolate. (See
 
 People
 
 v.
 
 Kor
 
 (1954) 129 Cal.App.2d 436, 443 [277 P.2d 94];
 
 People
 
 v.
 
 Abair
 
 (1951) 102 Cal.App.2d 765 [228 P.2d 336];
 
 People
 
 v.
 
 Singh
 
 (1932) 123 Cal.App. 365 [11 P.2d 73];
 
 United States
 
 v.
 
 Le Pera
 
 (9th Cir. 1971) 443 F.2d 810, 813, cert. den., 404 U.S. 958 [30 L.Ed.2d 275, 92 S.Ct. 326].)
 

 Defendant also argues that his cross-examination of Archuleta on the matter of his bias was improperly restricted. We do not agree. In connection with the possibility of prosecution and of his complicity in
 
 *566
 
 the crime, Archuleta was extensively cross-examined. The following are typical transcript references of his cross-examination on these subjects:
 

 “Q. Mr. Archuleta, were you pretty worried about the charges that were filed against you in this case?
 

 “A. Yeah.
 

 “Q. You’ve been in trouble with the Juvenile Court before, isn’t that true?
 

 “A. Yes.
 

 “Q. And, you knew this time you were going to have a real tough time of it, isn’t that true?
 

 “A. Yeah.
 

 “Q. And, was it also your understanding that if you could pin this crime on John, then nothing would happen to you?
 

 “A. Yes.”
 

 He was also extensively examined on his participation in the criminal acts for which the defendant was convicted.
 

 Defendant was not denied the opportunity to place the witness in proper perspective. His credibility was thoroughly questioned, and the weight of his testimony was put to a proper test. The jury was afforded full opportunity to appraise the witness and his testimony.
 
 (Alford
 
 v.
 
 United States
 
 (1931) 282 U.S. 687 [75 L.Ed. 624, 51 S.Ct. 218];
 
 People
 
 v.
 
 Boehm
 
 (1969) 270 Cal.App.2d 13, 21 [75 Cal.Rptr. 590];
 
 People
 
 v.
 
 Mardian
 
 (1975) 47 Cal.App.3d 16 [121 Cal.Rptr. 269].) Under the circumstances, the defendant fully achieved the constitutional right effectively to cross-examine his adversary witnesses.
 
 (Id.,
 
 at p. 40.)
 

 In addition, if the terms under which Archuleta agreed to testify were vital to Flores’ defense in order to further establish Archuleta’s bias, that information was available from the prosecutor. The defense counsel, in a probable choice of trial tactics, did not elect to pursue such a course, and
 
 *567
 
 counsel on appeal may not now complain of the absence of that information. (See
 
 United States
 
 v.
 
 Le Pera, supra,
 
 443 F.2d at p. 813.)
 

 III
 

 Finally, defendant contends he was improperly restricted in his cross-examination of Archuleta on his use of a knife on a prior occasion. While cross-examination to test the credibility of a prosecution witness is to be given wide latitude
 
 (Curry
 
 v.
 
 Superior Court
 
 (1970) 2 Cal.3d 707, 715 [87 Cal.Rptr. 361, 470 P.2d 345]), its control is within the discretion of the trial court
 
 (People
 
 v.
 
 Benjamin
 
 (1974) 40 Cal.App.3d 1035, 1042 [115 Cal.Rptr. 668]), and the trial court’s exclusion of collateral matter offered for impeachment purposes has been consistently upheld.
 
 (People
 
 v.
 
 Lavergne
 
 (1971) 4 Cal.3d 735, 743 [94 Cal.Rptr. 405, 484 P.2d 77].) Archuleta was cross-examined and admitted cutting a person at a New Year’s party after he, Archuleta, had first been stabbed. The court sustained the prosecutor’s objection to the question soliciting the name of the person involved in that incident as being collateral. The court did not err in limiting the cross-examination of such collateral matter. (Evid. Code, § 352;
 
 People
 
 v.
 
 Manson
 
 (1976) 61 Cal.App.3d 102, 158 [132 Cal.Rptr. 265].)
 

 The record reveals the court to have been consistent in its limitation of cross-examination by both the prosecution and the defense. They were both permitted to pursue limited questioning on prior knifing incidents and were subject to the same restraint. In each instance the court’s rulings were proper.
 

 The judgment is affirmed.
 

 Puglia, P. J., and Friedman, J., concurred.
 

 A petition for a rehearing was denied July 29, 1977, and the opinion was modified to read as printed above.