[Crim. No. 13993. Fourth Dist., Div. One. Nov. 19, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
JORGE GUTIERREZ, Defendant and Appellant

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Gabriel C. Vivas, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just and Nancy Sweet, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WIENER, J.**—Jorge Gutierrez appeals a judgment entered after a jury convicted him of kidnaping (Pen. Code, § 207)[1] and rape by force and by threats (former § 261, subds. (2) and (3)). Included among his contentions is his claim of prejudicial error resulting from the court's evidentiary ruling barring any cross-examination of the investigating officer eliciting a response in Spanish. As we shall explain, we have concluded this limitation of cross-examination violated Gutierrez' fundamental right of confrontation and cross-examination secured to him under the Sixth Amendment of the United States Constitution and article I, section 15 of the California Constitution. We therefore reverse the judgment.

*Factual Background*

Seventeen-year-old Lisa M. testified that in the early morning hours of June 7, 1980, Gutierrez forcibly raped her. Her testimony was corroborated by other witnesses and Gutierrez' confession. Gutierrez described the sex as consensual love making.

*Denial of Gutierrez' Sixth Amendment*
*Right to Confront and Fully Cross-examine*
*Officer Castello Requires Reversal.*

Police officer Joe Castello interviewed Gutierrez on June 9, 1980, at about 11 a.m. Vera Saldivar, a probation officer, was also present. Before starting his questioning, Castello first advised Gutierrez in Spanish of his constitutional rights. After waiving those rights, Gutierrez confessed. Part of Castello's testimony included the following:

"Q. What did the Defendant relate to you?

"A. He said that he approached her, made advances toward her, took her *forcibly* from the apartment by means of gagging her and binding her hands, took her out of the apartment.

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Q. After the Defendant stated that he *forcibly* took Lisa out of the apartment, what happened?

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

"A. He said that he started out with her. She got free. She ran from him. He ran her down, took her back *forcibly* and opened his trunk and put her in the trunk of the car and drove off with her out into the country.

"Q. When the Defendant indicated to you that he *forcibly* took her into the trunk, did he indicate what he meant by *forcibly*?

"A. Well, against her will, totally against her will." (Italics supplied.)

On cross-examination of Castello, defense counsel asked:

"Q. Now, in translations aren't certain words, can't they be a little different or have different meanings?

"A. They shouldn't have.

"Q. What about the term force? I don't know, force somebody, you mentioned that Mr. Gutierrez had said, for example, that he forced himself on her. How did he say it to you, do you remember?

". . . . . . . . . . . . . . . . . . . .

"THE COURT: We went through this to a certain extent yesterday. Now, there is no way that our court reporter is going to be able to put down something that this witness says in Spanish.

"MR. LEIBOWITZ: Well, I recognize that. May I approach? I have an offer or a suggestion.

"THE COURT: Yes. (Whereupon, the following proceedings were held at the bench:)

"MR. LEIBOWITZ: My suggestion there are certain words like force, forced intentions or something on them. What he says is very important.

"THE COURT: I am not a witness in this case but I can tell you the word force is the same in English as it is in Spanish as it is in Italian as it is in Portuguese.

"MR. LEIBOWITZ: I am talking about forced intentions I will have to get it in a different way, I guess.

"THE COURT: Ask anything you like, but don't ask him to repeat things in Spanish."

■ Gutierrez asserts the court's blanket ruling prohibiting any question causing the witness to respond in Spanish denied him his right to cross-examine secured by the Sixth Amendment. (See *Pointer* v. *Texas* (1965) 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065]; *Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620]; cert. den. 397 U.S. 1014 [25 L.Ed.2d 428, 90 S.Ct. 1248].)

Initially, we wish to note our awareness of the burden placed upon trial judges to effectively dispose of innumerable cases in our increasingly litigious society. In order to accomplish this difficult goal, a trial judge must work collegially with his or her support staff. Understandably a court will make every effort to minimize or eliminate unnecessary tasks for members of its staff to maintain the high level of morale essential to handle the enormous amount of work which must be produced daily. Obviously it was within this spirit that the judge here precluded cross-examination to avoid placing the court reporter in the time-consuming and unenviable position of taking down words in a foreign language complicated by the later problem of transcribing those words.

Nonetheless, the burden created did not warrant a ruling prohibiting all responses in Spanish. If the parties were to so stipulate, the bilingual witness or the interpreter could have written the answer out for the benefit of the court reporter for insertion in the reporter's transcript at a later time. Or, absent the stipulation, the reporter could report the answer phonetically. The alleged difficulties of receiving answers in Spanish from a crucial witness cannot be used to limit or encroach upon the constitutional rights of persons who are not fluent in English. There is no question but that a court has the responsibility to control all proceedings during trial (§ 1044) and trial court exclusion of collateral matter offered for impeachment has been consistently upheld. (*People* v. *Flores* (1977) 71 Cal.App.3d 559, 567 [139 Cal.Rptr. 546]; see also *People* v. *Redmond* (1981) 29 Cal.3d 904, 913 [176 Cal.Rptr. 780, 633 P.2d 976].) But that responsibility may not be expanded to deny a defendant the right to confront a key witness and to preclude cross-examination of that witness on the actual words used in the defendant's confession. If this case were free of the dual language problem, there would be no question but that defense counsel would have been permitted to ask the witness about the inculpatory words actually used by the defendant. Fairness as well as logic require the application of the same standard to all persons charged with the commission of a crime regardless of their ability to speak English.

The more difficult question remains, however, whether this limited right of cross-examination was prejudicial under *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]. May we say that the error here was "harmless beyond a reasonable doubt"? (*Id.*, at p. 24 [17 L.Ed.2d at p. 711].) If we could properly limit our inquiry to a determination whether there was

other evidence that Gutierrez forced himself upon Lisa, we could answer this question in the affirmative. Castello testified he observed Lisa's neck was bruised and one of her eyes was "blood-stained" when he went to her apartment on the morning of June 8. Lisa testified Gutierrez "slugged" and "slapped" her. But our responsibility in determining whether the error is harmless beyond a reasonable doubt requires more.

The right of cross-examination is one of the safeguards essential to a fair trial and the United States Supreme Court has been zealous in protecting the rights of confrontation and cross-examination from erosion. The courts of this state have taken a similar stand, stressing the ". . .'most substantial' nature of the defendants' right to confront witnesses, designating it a 'right of the highest importance.'" (*People* v. *Chavez* (1980) 26 Cal.3d 334, 357 [161 Cal.Rptr. 762, 605 P.2d 401], citations omitted.) The scope of protecting this most precious right is highlighted in *Smith* v. *Illinois* (1968) 390 U.S. 129 [19 L.Ed.2d 956, 88 S.Ct. 748]. There, a state conviction was reversed because of a denial of a Sixth Amendment right even though the defendant's right to cross-examine the chief prosecution witness was neither denied nor delayed but simply curtailed by preventing questions asking the witness' name and address. The court said "[t]o forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." (*Id.*, at p. 131 [19 L.Ed.2d at p. 959].)

Here, the actual words used by Gutierrez are highly significant. A substantially different connotation could have been drawn by the jury had Gutierrez said he was only trying to force his affections upon Lisa compared to the inference which the jury drew that he was *physically* forcing himself upon her. What the answer to this question would have been and what additional questions would have been asked or what answers would have been given are admittedly unknown. Nevertheless, "'[q]uestions on cross-examination . . . are largely exploratory, and it is unreasonable to require an offer of proof since counsel often cannot know what pertinent facts may be elicited.'" (*Gallaher* v. *Superior Court* (1980) 103 Cal.App.3d 666, 672 [162 Cal.Rptr. 389] quoting *Tossman* v. *Newman* (1951) 37 Cal.2d 522, 525 [233 P.2d 1].) Because the right of cross-examination is judically perceived to be the "'greatest legal engine ever invented for the discovery of truth'" (see *California* v. *Green* (1970) 399 U.S. 149, 158 [26 L.Ed.2d 489, 497, 90 S.Ct.1930], quoting 5 Wigmore, § 1367), we hold the People have not proved the court's error in restricting cross-examination was harmless beyond a reasonable doubt.

*The Court Properly Refused to Instruct the Jury on Unlawful Sexual Intercourse (CALJIC No. 10.10 (1979 Revision)).*

For guidance of the court upon retrial, we address Gutierrez' contention the court erred in failing to instruct the jury on the crime of unlawful sexual intercourse (§ 261.5) as a necessarily included offense of the charged offense of forcible rape. (§ 261.)

An offense is characterized as "lesser included" if all its elements must necessarily be included in the elements of the greater offense as each is defined by statute or by the charging language of the information. (*People* v. *Puckett* (1975) 44 Cal.App.3d 607, 611 [118 Cal.Rptr. 884].)

Here, the applicable statutes provide: "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, where the female is under the age of 18 years." (§ 261.5.)

"Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:

". . . . . . . . . . . . . . . . . . . . .

"(2) Where it is accomplished against a person's will by means of force or fear of immediate and unlawful bodily injury on the person of another." (§ 261.) To constitute unlawful sexual intercourse, the victim must be under the age of 18, an element not necessarily included in the crime of forcible rape.

Gutierrez argues, however, that even if unlawful sexual intercourse is not necessarily included in the offense of forcible rape, the court had a duty to give the requested instruction to insure the jury considered all material issues presented by the evidence. (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390].) One argument he makes for this proffered instruction is the unfairness to do otherwise. He explains it is common knowledge that sexual intercourse with a female under the age of 18 is a criminal act. The jury was well aware that Gutierrez committed this crime. However, when the jurors were asked to decide solely between acquitting or convicting Gutierrez of forcible rape, they may have convicted him because acquittal would have resulted in their absolving a man who clearly committed a crime. Gutierrez asserts by refusing to give the unlawful intercourse instruction, the court stripped him of his only defense.

Although we are sympathetic to this argument, we have concluded the reasoning of *People* v. *West* (1980) 107 Cal.App.3d 987 [165 Cal.Rptr. 24] is persuasive. In rejecting a similar contention, the court explained that requiring the trial court, if requested, to instruct the jury it may convict the defendant of a lesser but not included offense although defendant has been charged with a different more onerous crime gives the defendant the power to decide what crime

he is charged with, "a power that resides exclusively with the prosecution." (*Id.*, at p. 993; see also *People* v. *Singleton* (1980) 112 Cal.App.3d 418 [169 Cal.Rptr. 333], conc. opn. Staniforth, J., pp. 431-432.)

Moreover, there is a significant difference in the burden imposed upon the trial court and the requirement that instructions must be given on "necessarily included offenses" supported by substantial evidence and requiring instructions on offenses which are not "necessarily included." The term "necessarily included" is strictly defined by case law. (*People* v. *Lohbauer* (1981) 29 Cal.3d 364, 368-369 [173 Cal.Rptr. 453, 627 P.2d 183].) There are no such definitions or limitations with respect to offenses which are not "necessarily included" to effectively guide the trial court in deciding whether to give the requested instruction. We will not add an additional trial court requirement which may well frustrate, rather than contribute to the administration of justice.

*Disposition*

Judgment reversed.[2]

**STANIFORTH, J.**—■ ■ ■ I concur in the well-reasoned views expressed by Justice Wiener and would add these further words in response to the concerns expressed by the dissent.

A simple reading of the colloquy between court and counsel quoted by the dissent makes reversal inevitable. The law is: "[W]here the gist of the case under consideration involves the uttering in a foreign language of certain words having a particular meaning in that language it may be necessary to have the actual words used in that language repeated in court by the witness who heard them, and in the same language in which they were spoken, and precisely as they were used in that language." (98 C.J.S. Witnesses, § 326, p. 27, and cases cited.) 5 Wigmore on Evidence, section 1393, page 146, agrees: "Moreover, the opponent is also entitled to *cross-examine the interpreter* so as to test the correctness of the translation . . . ." (Fns. omitted.) And the "*interpreter may be required to repeat in the foreign language the words used by him,*" citing *Territory* v. *Kawano* (1911) 20 Hawaii 469; *Schnier* v. *People* (1859) 23 Ill. 17 (*Ibid.*; fn. 5; italics added.)

---

[2]In light of our disposition, we have concluded it is unnecessary for us to discuss the effect of Castello's alleged failure to properly advise Gutierrez of his *Miranda* rights. On this record, however, we believe it appropriate that Gutierrez have the further opportunity to relitigate whether he made a knowing and intelligent waiver of his *Miranda* rights. To the extent possible, because of the issues involved, it would indeed be helpful, perhaps even essential, if Gutierrez had a Spanish-speaking lawyer at all stages of the proceeding, including his further Evidence Code section 402 hearing.

Thus the correctness of the interpretation may be challenged by a party and "[i]ndependent evidence may be introduced to show that the interpreter's version was incorrect, or the interpreter himself may be placed on the witness stand and cross-examined as to what the witness had said." (2 Wharton, Criminal Evidence, § 404, p. 268; fn. omitted; see Annot. (1971) 36 A.L.R.3d 276.) And where the arresting officer is called upon to interpret as to a defendant's statement, there is an inherent possibility of bias and consequently a violation of the defendant's due process. (*Gonzales* v. *State* (Del. Super. 1977) 372 A.2d 191, 192-193, and cases cited.) The foregoing analysis of correct procedures follows logically from California Evidence Code section 750 to the effect that an interpreter "is subject to all the rules of law relating to witnesses."

The foregoing authorities demonstrate that the rudimentary demands of a fair trial require Sixth Amendment rights to confrontation be preserved when the witness testifies in a foreign language. (See Wigmore, *supra,* § 1393, pp. 143-146, § 1397, p. 155.) Here Castello testified to inculpatory statements allegedly made by Gutierrez which would establish the forcible nature of Gutierrez' conduct, an essential element of the prosecution's case. Therefore, cross-examination as to the actual words used by Gutierrez was crucial to the defense. Had defense counsel been permitted to discover the exact words used by Gutierrez, in Spanish, not only would the literal meaning of defendant's statement be presented to the jury, but the veracity and extent of Castello's own linguistic interpretative abilities would be elicited.

Gutierrez was deprived of his right to confront Castello since Castello's testimony was given under circumstances in which defense counsel was not afforded an opportunity for complete and adequate cross-examination. The error was constitutional, involving a violation of the Sixth and Fourteenth Amendments. (*People* v. *Gibbs* (1967) 255 Cal.App.2d 739, 746 [63 Cal.Rptr. 471].) To be denied the right of cross-examination on the most critical bit of evidence in the case resulted in an unfair trial. I join in the reversal of the conviction.

**COLOGNE, Acting P. J.**—I must respectfully dissent.

Code of Civil Procedure section 185 states, "Every written proceeding in a court of justice in this state shall be in the English language, and judicial proceedings shall be conducted, preserved, and published in no other." The wisdom of that section must be acknowledged when the court reporters try to transcribe foreign words they have never heard, much less understand, and when this reviewing court attempts to make sense out of a record of phonetically spelled meaningless (to us) foreign words. The trial court here did no more than seek compliance with this mandate. No constitutional right was abridged.

The defendant was not confused or prejudiced by the court's conduct. We need only look at the record to see the truth there was no denial of confrontation.

Earlier in the Evidence Code section 405 proceedings, the prosecutor asked Officer Joe Castello if he advised Gutierrez of his constitutional rights in English or Spanish and Castello replied it was done in Spanish. On cross-examination, Castello was asked what he said. The witness inquired whether the attorney wanted it repeated in Spanish and the attorney said yes. At this point, the court interrupted and the following discussion was had:

"THE COURT: I don't think that is appropriate.

"MR. LEIBOWITZ: We have an interpreter, your Honor, a certified one. I would like to know how he phrased it.

"THE COURT: All right.

"THE REPORTER: Wait a minute. How do you want me to take this down?

"THE COURT: This was the reason for my demuring [sic] to your suggestion because there is no way that the court reporter can take this down.

"MR. LEIBOWITZ: She can take down what Mrs. Becerra says.

"THE COURT: I think my first ruling should stand.

"MR. LEIBOWITZ: I mean Mrs. Becerra can repeat in English what he is saying in Spanish and that can be taken down.

"THE COURT: What he is saying can't be taken down.

"MR. LEIBOWITZ: If there is any error in it, your Honor, it is very critical. The whole thing is critical to what is being said. That is the problem with this.

"THE COURT: The only way I would agree to permit that is that if you will stipulate that what he says in Spanish is not—need not be reported. How can you ever check that? How could you ever check Mrs. Becerra's translation?

"MR. LEIBOWITZ: That may be a problem, your Honor, but I recognize the problem. I recognize it can't be taken down in Spanish unless he can write it out in Spanish. If he can write it out—if I am not mistaken if I may ask him the question, I think maybe we can clear it up.

"THE COURT: What is tatt [*sic*]?

"BY MR. LEIBOWITZ:

"Q. Mr. Castello, do you write Spanish?

"A. I read, speak and write fluently.

"MR. LEIBOWITZ: Your Honor, if he would please then write in Spanish then we will have a record." This was done and cross-examination was completed with the record totally in English.

It is significant to note Gutierrez was able to raise the issue suggested by the officer's "improper" *Miranda* warning given in Spanish. The word the officer used in the warning given in Spanish means "furnish" in English but carried a different meaning than was intended. The Spanish word Castello used when advising Gutierrez an attorney would be "furnished" meant "furnish" in the sense to "fill a room with furniture" rather than "provide." The record which the court provided permits us to understand the problem. The majority was able to resolve that issue and did not even address it because at the hearing Gutierrez, who was bilingual, admitted he understood his rights in that regard and was not misled by the officer's use of the wrong word.

The court's handling of this problem serves as an introduction to the later problem relative to the possible dual meaning of the Spanish word for "force," which, as the majority holds, provides the alleged denial of confrontation. The record, as quoted by the majority, makes that point clear when the court said: "We went through this to a certain extent yesterday. Now there is no way our court reporter is going to be able to put down something that the witness says in Spanish." During the discussion which followed, the court said, *"Ask anything you like but don't ask him to repeat things in Spanish."* How can that be deemed a denial of cross-examination?

As was done earlier, counsel could have asked the witness to write down what Gutierrez said, cross-examine him on the meaning of the specific word or idiom by reference to the writing, then if he felt the translation was inaccurate, bring in an interpreter to counter the witness' understanding of the meaning. This approach, while not the exclusive method of handling the problem,[1] was suggested earlier by Gutierrez' counsel and actually used, so counsel cannot say he was unaware of an acceptable way to handle cross-examination and reach the problem.

---

[1]Examining the witness in Spanish through an interpreter might also have been found acceptable and the court made no effort to rule that out. Here, however, because the witness could write the language, the method used was obviously the most expeditious.

The argument is, in any event, just a little ridiculous since no effort was made by Gutierrez, either in his own testimony or that of an interpreter, to show there is in fact a second meaning for the word; i.e., not the use of strength or violence to achieve a result against another's will or resistance.[2] His own testimony was he *never* told the officer he used "force" against Lisa. The issue was clearly not one of different interpretations of the word Gutierrez used but, rather, whether he said it at all. The argument there are two meanings is clearly a smoke screen.

Although much has been written on the necessity of providing qualified interpreters, especially in criminal cases, the authorities provide little assistance on how counsel should examine a witness where a foreign language is a factor.[3] Spanish language has some similarities with English and uses substantially the same alphabet. I submit, however, a reporter with limited knowledge of the language who attempts to take down words phonetically will have difficulty accurately reporting words containing double "L," a silent "H," the "J" or "G" with an "H" sound, or the "N" with a tilde. The confusion is further complicated when idioms are used to alter literal meanings. (See Rainof, *How Best to Use an Interpreter in Court* (1980) 55 State Bar J. 196.)

The reporter should not be called upon to include words spoken in a foreign language. Consider the problems which would follow when an oriental language is the subject of testimony and there is no similar alphabet.

If the Supreme Court feels the keeping of a record in English denies a person the right of confrontation, I respectfully suggest the superior court be given broader instruction on how best to provide a proper record in these cases.

I would affirm.

Respondent's petition for a hearing by the Supreme Court was denied January 27, 1983.

---

[2]Gutierrez' brief does not suggest what the Spanish word was and my examination of the Spanish Dictionary prepared for Enciclopedia Barsa, Prentice Hall, Inc., and discussions with Spanish scholars do not reveal what might have been said to create any ambiguity with regard to the fact force was used.

[3]See (1975) 8 U.C. Davis L.Rev. 471; (1975) 63 Cal.L.Rev. 801; (1974) 5 Pacific L.J. 678. Attention is also called to section 750 et seq. of the Evidence Code dealing with interpreters and translators.