Filed 12/30/21  P. v. Santiago CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FLORIBERTO MONTERUBIO SANTIAGO,<br><br>Defendant and Appellant. | F080871<br><br>(Super. Ct. Nos. MCR059778 & MCR059042)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Ernest J. LiCalsi, Judge.

Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman, Michael Dolida and Angelo S. Edralin, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

A jury convicted appellant Floriberto Monterubio Santiago of multiple crimes, including assault with intent to commit rape, oral copulation or sodomy by force, fear or threats during the commission of a residential burglary in violation of Penal Code section 220, subdivision (b).[1]  In the present appeal, he raises claims of insufficiency of the evidence and ineffective assistance of counsel.  We reject those claims.  However, we agree with the parties that appellant's conviction in count 2 (first degree residential burglary) must be vacated and that charge dismissed because it is a lesser included offense to his conviction in count 1 (assault with intent to commit rape, oral copulation or sodomy during a residentiary burglary).  We also agree with appellant that it is appropriate to vacate any unpaid balance of the criminal justice administration fee which the court imposed against him pursuant to former Government Code section 29550.2, subdivision (a).  Finally, we agree with the parties that appellant's sentence must be vacated in light of Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567).  We vacate appellant's sentence and remand for resentencing.

**BACKGROUND**

We summarize the relevant facts supporting appellant's judgment, along with the jury's verdicts.  Appellant's convictions stem from two incidents that occurred in July 2018.  Both incidents transpired at the victims' residence in Madera County.  At trial, appellant did not provide any affirmative evidence.

**I.      The First Incident On July 5, 2018.**

The first incident happened on July 5, 2018.  Sometime between 5:00 a.m. and 6:00 a.m., appellant entered the victims' home uninvited by climbing through a kitchen window.  He had removed the screen to that window, which faced the backyard.  Once inside, appellant walked down a hallway towards the front of the house.  He used the

---

[1]      All future statutory references are to the Penal Code unless otherwise noted.

light from a cellular phone to guide him. He entered the bedroom of a 19-year-old woman, A.S., who was asleep in her bed. A.S. lived in the residence with her parents, her brother and his wife (along with their baby), and her younger sister, C.S. A.S. slept in her own bedroom, which faced the front yard.

It was dark outside when the following occurred. A.S. woke up when she heard appellant close her bedroom door. She was wearing a T-shirt and shorts, and she was lying in bed. She saw him standing near her desk. She did not recognize him, and she was in shock and fear. She sat up and he was looking at her. He spoke to her, but she could not understand his heavily accented English.

A.S. got out of bed and she walked towards her closed door. Appellant walked towards her and they met face-to-face. He grabbed her wrist. She pulled free and she shoved him with both hands on his chest. She was able to run out of her bedroom.

At trial, A.S. denied that she had needed a "tremendous" amount of force to break free from appellant, and he did not do anything else to try to stop her. He did not follow her or threaten her. Once outside her bedroom, A.S. began yelling and her family woke up. Appellant fled by climbing out of her bedroom window.

The family searched outside their property for appellant, but they could not locate him. About 30 minutes later, the family called law enforcement. Before law enforcement arrived, however, A.S. saw appellant across the street. Her father and brother chased appellant, who fled and eluded them.

Law enforcement arrived at the house around 6:00 a.m. It was determined that appellant had not taken any property from the home before he fled. Law enforcement was unable to locate appellant that morning.

3.

## II.    A.S. Realizes That Appellant Lives On Her Street.

Although she had not recognized appellant when he was in her bedroom, A.S. realized after this incident that appellant was someone who lived across the street from her.  She had previously seen him sitting outside.  They had never spoken.

On or about July 9, 2018, A.S. alerted law enforcement that she had spotted the male who had entered her bedroom.  She informed an officer that the suspect was across the street from her house.

## III.    The Second Incident On July 11, 2018.

On July 11, 2018, the second incident occurred at the same residence.  C.S., who was 13 years old at the time, was asleep in her bedroom, which faced the backyard.  Sometime between 5:30 a.m. and 6:00 a.m., she heard somebody manipulating the screen on her bedroom window.  She ran into her parents' bedroom and alerted them.

The father went into C.S.'s bedroom and he saw appellant standing outside that window.  The father spoke to appellant, who ran into the front yard.  Appellant hid behind a bush but the family spotted him.  The father and mother physically tried to detain appellant in their front yard, but appellant broke free.

While appellant was walking away, the father heard him make a threat.  At trial, the father provided different versions of what appellant said.  First, the father testified that appellant yelled, " 'I'll be back.  I'm Miguel.'  He said, 'I'm going to come back for your son.  I'm with the Zetas.' "  Later, the father testified that he heard appellant yell, " 'I'm Miguel.  I'm with the Zetas.  I'm gonna [*sic*] be back for your son.' "

The mother heard appellant say, " 'I came to look for your son on behalf of Miguel.' "  She also heard appellant say that he would "come back" and that he was "with the Zetas."

At trial, the father testified that appellant's statements made him feel afraid for his family.  He testified that he was still afraid.  The father told the jury that he believed

4.

appellant. The father knew "Zetas" was a Mexican gang that engaged in drug dealings and kidnappings. The father believed appellant was a member of the Zetas.

After appellant left, the family called law enforcement, who responded a short time later. The family discovered that the screen had been removed from the window of C.S.'s bedroom. The screen was lying on the ground outside. The screen had been over that window before this incident.[2]

Law enforcement was told that appellant possibly lived on the same street. Law enforcement identified appellant's residence and they entered it that afternoon. They located appellant hiding under a bed and he was arrested that same day.

## IV. At Trial, The Family Members Each Identify Appellant As The Perpetrator In Both Incidents.

At trial, A.S., C.S., their older brother and their parents all separately identified appellant as the male who was responsible for the two incidents. Before these encounters, the family had seen appellant on their street. Appellant, however, had never spoken with any of the family members.

## V. The Jury's Verdicts.

The jury convicted appellant of the following charges:

1. In count 1, assault with intent to commit rape, oral copulation or sodomy by force, fear or threats during the commission of a residential burglary in violation of section 220, subdivision (b).

2. In count 2, first degree residential burglary (committed on or about July 5, 2018) in violation of section 459.

---

[2] Appellant does not challenge the sufficiency of the evidence supporting his conviction for first degree residential burglary (§ 459) in count 3 committed on July 11, 2018. Our Supreme Court holds that "a window screen is clearly part of the outer boundary of a building for purposes of burglary." (*People v. Valencia* (2002) 28 Cal.4th 1, 12, disapproved on other grounds by *People v. Yarbrough* (2012) 54 Cal.4th 889, 894.)

3. In count 3, first degree residential burglary (committed on or about July 11, 2018) in violation of section 459.

4. In count 4, making a criminal threat in violation of section 422, subdivision (a).

The jury's verdicts were rendered in Madera County Superior Court case No. MCR059778. In count 5, the jury found appellant not guilty of receiving stolen property, a misdemeanor, in violation of section 496, subdivision (a).

## VI. Appellant's Prison Sentence.

The trial court imposed an upper term prison sentence of six years in count 3 (first degree burglary), and a consecutive one-third subordinate term of eight months in count 4 (making a criminal threat). An upper term prison sentence of six years was imposed in count 2 (first degree burglary), which was stayed pursuant to section 654. A consecutive sentence of life with the possibility of parole was imposed in count 1 (assault with intent to commit a sex crime during a residentiary burglary).[3]

Appellant was also sentenced in Madera County Superior Court Case No. MCR059042, which involved a violation of probation. In that matter, the trial court imposed a consecutive subordinate term of eight months for second degree burglary (§ 459). Appellant's aggregate determinate term in both cases was seven years four months, along with the consecutive indeterminate term.

## DISCUSSION

We do not address appellant's claims in the order he presented them. Because they are potentially dispositive, we first address appellant's assertions that his convictions in counts 1 and 4 must be reversed for insufficient evidence. We then address his remaining contentions on appeal.

---

[3] A defendant sentenced to life in prison with the possibility of parole becomes eligible for parole after serving seven years. (§ 3046, subd. (a)(1).)

**I.     The Jury Had Sufficient Substantial Evidence To Find Appellant Guilty In Count 1.**

Appellant argues his conviction in count 1 (assault with intent to commit a sex crime) must be reversed for insufficient evidence. According to appellant, nothing shows he touched A.S. with the specific intent to commit a forcible sex crime.

**A.     Background.**

For count 1, the jurors were instructed that they could find appellant guilty based on two theories: (1) assault with intent to commit a sex act while committing first degree burglary or (2) simple assault.

### 1.     The instruction under CALCRIM No. 890.

For the greater offense of assault with intent to commit a sex act while committing first degree burglary, the jury was instructed with CALCRIM No. 890. In relevant part, the jury was told that appellant was guilty if, during the commission of first degree burglary, he willfully did an act that would directly and probably result in the application of force to a person, and when he acted, he had the present ability to apply that force and he was aware of facts that would lead a reasonable person to realize that his act, by its nature, would directly and probably result in the application of force to someone, and when he acted, he intended to commit rape, oral copulation by force, or sodomy by force.[4]

### 2.     The jury instruction under CALCRIM No. 915.

With CALCRIM No. 915, the jury was instructed on simple assault. The jury was told that simple assault is a lesser included offense to assault with intent to commit a sex act. In relevant part, the jury was informed that appellant was guilty if he willfully did an act that would directly and probably result in the application of force to a person, and when he acted, he had the present ability to apply that force and he was aware of facts

---

[4]     The trial court instructed the jury on the definitions of rape, oral copulation and sodomy.

7.

that would lead a reasonable person to realize that his act, by its nature, would directly and probably result in the application of force to someone.

### 3. The relevant closing arguments.

The prosecutor argued to the jury that appellant was guilty in count 1 of assault with intent to commit rape. The prosecutor noted that appellant lived across the street from A.S. He broke into the back of the house but proceeded directly to the front of the house and entered A.S.'s bedroom. Shutting her door was an attempt to isolate her from her family. He grabbed her wrist when she became frightened and tried to leave. Appellant never tried to steal anything. The prosecutor asserted that the only reasonable explanation for appellant's presence in A.S.'s bedroom was to rape her.

In contrast, appellant's trial counsel argued that appellant had not entered the house with the intent to commit rape, sodomy or oral copulation. When appellant spoke with A.S., she could not understand him. Defense counsel asserted that one reasonable conclusion was that appellant went into her bedroom to talk to her. Defense counsel reminded the jurors not to speculate, and no evidence showed that appellant had planned to enter the house to commit rape, sodomy or oral copulation. Counsel also asked the jury to find appellant not guilty of simple assault. Although appellant had touched her, he only went into her bedroom to talk to her. Counsel noted that A.S. was able to get away from appellant, who did not pursue her. At the conclusion of his arguments, however, defense counsel acknowledged that the jurors could return a verdict of simple assault in count 1, which defense counsel described as "fair enough."

### B. The standard of review.

When considering a challenge to the sufficiency of the evidence to support a conviction, we review the record in the light most favorable to the judgment and decide whether it contains substantial evidence from which a reasonable finder of fact could make the necessary finding beyond a reasonable doubt. The evidence must be

reasonable, credible and of solid value. We presume every inference in support of the judgment that the finder of fact could reasonably have made. We do not reweigh the evidence or reevaluate witness credibility. We cannot reverse the judgment merely because the evidence could be reconciled with a contrary finding. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 293.) The standard of review is the same in which a conviction is based primarily on circumstantial evidence. (*People v. Clark* (2016) 63 Cal.4th 522, 625.)

### C. Analysis.

In raising this claim, appellant does not dispute that sufficient evidence supports the proposition that he was the one who entered A.S.'s bedroom and grabbed her wrist. However, he contends it is "mere speculation" to assume that he had harbored a specific intent to commit rape, forcible sodomy, or forcible oral copulation. He argues that, although nothing was stolen from inside the house, that does not necessarily mean he intended to commit a non-theft crime.

Appellant notes that A.S. did not need much force to break free from him after he grabbed her wrist, and he did not offer much resistance. She did not scream until she exited the bedroom. He did not touch her in a sexual manner. He maintains that, even if sufficient evidence shows he intended "some sort of sexual activity," it was nevertheless insufficient to show he specifically intended the forcible sex crimes alleged in count 1. Appellant contends his conviction in count 1 should be reversed and dismissed.

We disagree with appellant's various arguments. The jury had sufficient evidence to reach its verdict in count 1. Two opinions cited by respondent are instructive: (1) *People v. Nye* (1951) 38 Cal.2d 34 (*Nye*), disapproved on other grounds in *People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 882, and (2) *People v. Padilla* (1962) 210 Cal.App.2d 541 (*Padilla*).

9.

### 1. Respondent's cited authorities.

#### a. *Nye*.

In *Nye*, the defendant was convicted of two counts of assault with intent to commit rape. (*Nye*, *supra*, 38 Cal.2d at p. 36.) The assaults involved two different victims from two separate incidents. (*Ibid*.) On appeal, the defendant challenged the sufficiency of the evidence supporting the second conviction. (*Ibid*.) The second assault occurred 20 days after the first victim had been assaulted. The second assault occurred at a motel and the defendant entered the second victim's bedroom early in the morning. "She awakened as he was closing the door. When she asked what he wanted, he came to her bed, placed his hand over her mouth and grasped her wrist. She screamed and kicked, and when she bit his hand he fled from the room. He did not expose himself or get on the bed with her and made no attempt to take any property." (*Nye*, *supra*, 38 Cal.2d at pp. 36–37.)

The two victims identified the defendant as their assailant. (*Nye*, *supra*, 38 Cal.2d at p. 37.) Two police officers testified that the defendant had admitted he attacked the two victims, and his purpose for entering the motel was to have sex with the second victim. (*Ibid.*)

In *Nye*, our Supreme Court stated: "When a strange man enters a woman's bedroom, covers her mouth with his hand, grasps her wrist while she screams and kicks, releases her when she bites his hand, and makes no effort to take any property, it is reasonable to infer that he intended to commit rape, particularly when such an intent is shown by his attempt to rape another woman under similar circumstances." (*Nye*, *supra*, 38 Cal.2d at pp. 37–38.) The high court concluded that sufficient evidence supported the conviction. (*Id.* at p. 38.)

#### b. *Padilla*.

In *Padilla*, the defendant was acquitted by the trial judge of assault with intent to commit rape, but the defendant was convicted of first degree burglary after entering the victim's bedroom in the early morning hours. (*Padilla*, *supra*, 210 Cal.App.2d at p. 542.)

10.

One issue on appeal was whether sufficient evidence showed an intent to rape to support the burglary charge. (*Id.* at p. 543.) The appellate court found sufficient evidence. (*Id.* at p. 544.) When the victim saw the defendant sitting on her bed, she tried to get up. As she did, the defendant placed a handkerchief over her face. She struggled to get free and began screaming. The defendant fled from the house. (*Id.* at p. 542.)

The appellate court noted that the defendant had entered the victim's house at night and without consent. The evidence was "clearly sufficient" to conclude that the defendant had entered the house for the purpose of raping the victim. (*Padilla*, *supra*, 210 Cal.App.2d at p. 544.) Rather than presenting "some logical explanation" for his presence at that hour of the morning, the defendant had denied being in the house. "The intent with which he entered must therefore be inferred from an act or acts on his part or from some other circumstances." (*Ibid*.) The appellate court mused that, although the trial judge may have felt that the defendant abandoned any thought of assaulting the victim with the intent to commit rape, the defendant had nevertheless entered the home with the clear intent to rape the victim. (*Id.* at p. 545.) The judgment was affirmed. (*Id.* at p. 546.)

In this matter, we agree with respondent that appellant's conduct is similar to the conduct demonstrated in *Nye* and *Padilla*. Appellant entered a strange woman's bedroom in the early morning hours, he grabbed the victim, and he did not try to take any property.

Appellant argues that, unlike in *Nye*, he never admitted to police that he intended to have sex with A.S. Appellant also asserts that, unlike in *Nye*, no evidence was introduced showing he had previously tried to rape other women. He concludes that "*Nye* is readily distinguishable" from his case. We disagree.

Although the jury heard no admissions from appellant, they were permitted to infer his specific intent based on his conduct and the totality of the circumstances. (*People v. Holt* (1997) 15 Cal.4th 619, 669; *People v. Park* (2003) 112 Cal.App.4th 61, 68.) A defendant's state of mind is almost always based on circumstantial evidence,

which is just as sufficient as direct evidence to support a conviction. (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.)

Here, the reasonable inferences drawn from this record demonstrate appellant's intent to rape A.S. Appellant lived across the street from the victims' home. A.S.'s bedroom faced the front yard. Thus, it is reasonable to presume that appellant had seen A.S. before and he knew where her bedroom was located.

Appellant entered the victims' home through a window that faced the backyard. Instead of stealing property or rummaging for valuables, he proceeded to the front of the house and walked into A.S.'s bedroom. Appellant's failure to take any property strongly suggests that his purpose in entering the home had nothing to do with theft. To the contrary, his conduct strongly suggests he had specifically targeted A.S.

Upon entering A.S.'s bedroom, appellant shut the door, which caused A.S. to wake up. When A.S. became frightened and she tried to leave, appellant grabbed her. A.S. was able to push appellant away and she fled. Although A.S. was able to escape, shutting her bedroom door beforehand reasonably suggests that appellant intended to hide his actions, to prevent her escape, and to isolate A.S. from her family. Shutting the door also reasonably shows that appellant had a preconceived plan in hoping to find A.S. in her bedroom and trap her there.

We disagree with appellant's suggestion that *Nye* is distinguishable because A.S. did not need to defend herself as violently as what occurred in *Nye*. Although A.S. did not bite appellant, or scream and kick, she nevertheless physically resisted appellant and actively pushed him away. The circumstances amply demonstrate that A.S. protected herself and stopped appellant from completing his illicit plan. Although appellant did not touch her in a sexual manner, or engage in other conduct commonly associated with rape, it was A.S.'s response that prevented any further crime from occurring. Appellant may not have offered much resistance when A.S. pushed him; however, that tells us more

about A.S.'s "pluck" and resolve than appellant's intentions. (See *People v. Pendleton* (1979) 25 Cal.3d 371, 377.)

In conducting our review, we must presume every inference in support of the judgment that the jury could reasonably have made, and we cannot reverse the judgment merely because the evidence could be reconciled with a contrary finding. (*People v. D'Arcy*, *supra*, 48 Cal.4th at p. 293.) Although appellant can point to other interpretations from the record, the jury was permitted to draw the reasonable conclusion that appellant had held an intent to rape. Indeed, the circumstantial evidence does not reasonably suggest that appellant may have harbored other intents or motives. For example, because he grabbed her, a reasonable inference does not exist that appellant had merely intended to talk with A.S. when he entered her bedroom uninvited and shut her door. In any event, it was the jury, and not this reviewing court, which must be convinced of appellant's guilt beyond a reasonable doubt. (*People v. Bean* (1988) 46 Cal.3d 919, 933.) If the circumstances reasonably justify the jury's findings, as they do here, the opinion of this reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment. (*Ibid.*)

Although no prior acts of rape were introduced at trial against appellant, the jury learned that appellant returned to the same house only six days later, and he was in the process of entering the bedroom window of 13-year-old C.S. when the father thwarted him. Appellant's return to C.S.'s bedroom window overwhelmingly suggests he was targeting the family's two daughters.

In a footnote, appellant acknowledges that he tried to enter C.S.'s bedroom through her window mere days after his encounter with A.S. He argues, however, that the jury was never instructed that it could consider that second incident as evidence of his intent. We disagree with appellant's suggestion it was improper for the jury to consider appellant's total conduct when deciding his guilt in count 1. The jury was instructed to consider all of the evidence to determine appellant's guilt, and the jurors were informed

13.

that circumstantial evidence could be used to establish appellant's intent or mental state. The jurors were told that, before they could rely on circumstantial evidence to find appellant guilty, they must be convinced that appellant's guilt was the only reasonable conclusion supported by the circumstantial evidence. The jurors were instructed that, if two or more reasonable conclusions from the circumstantial evidence could be drawn regarding appellant's mental state, and one reasonable conclusion supported a finding that appellant did not have the required intent or mental state, then the jurors "must conclude that the required intent or mental state was not proved by the circumstantial evidence."

Stemming from all of the evidence, the jury was free to conclude that appellant had targeted both daughters, and he had intended to rape A.S. Based on the verdict rendered, it is apparent that the jurors determined that no reasonable conclusions could be drawn from the circumstantial evidence that supported a finding appellant did not have the required intent or mental state in count 1. The jury's verdict also shows it rejected the defense's suggestion that a conviction of simple assault in count 1 was appropriate.

Finally, we agree with respondent that *Padilla* supports affirming appellant's conviction. Although the defendant in *Padilla* was acquitted by the trial judge of assault with intent to commit rape, the appellate court affirmed the conviction for burglary based on an intent to commit rape. The *Padilla* court noted that the defendant had entered the victim's house at night and without consent. Thus, the evidence was "clearly sufficient" to conclude that the defendant had entered the house for the purposes of raping the victim. (*Padilla*, *supra*, 210 Cal.App.2d at p. 544.) The defendant had not presented a "logical explanation" for his presence at that hour of the morning. (*Ibid.*) The evidence showed that the defendant had entered the home with the clear intent to rape the victim. (*Id.* at p. 545.)

Similar to *Padilla*, no other logical explanation exists for appellant's presence in A.S.'s bedroom at that hour of the morning other than to commit rape. The totality of

14.

appellant's conduct with A.S., coupled with his return six days later and his attempt to enter C.S.'s bedroom window, demonstrates his intent to commit rape. The jury had sufficient evidence to reach its verdict and we will not disturb the jury's determination.

We turn to appellant's cited authorities.

### 2. Appellant's cited authorities.

Appellant relies primarily on two opinions: (1) *People v. Greene* (1973) 34 Cal.App.3d 622 (*Greene*) and (2) *People v. Puckett* (1975) 44 Cal.App.3d 607 (*Puckett*). These opinions do not assist him.

#### a. *Greene*.

In *Greene*, the defendant approached a 16-year-old girl "from the direction in which [she] was walking, put his arm around her waist, and turned her around." (*Greene, supra*, 34 Cal.App.3d at p. 650.) He said to her, " 'Don't be afraid. I have a gun. Don't move.' " (*Ibid.*) She felt something hard pressed against her side. The defendant told her to be quiet. At his request, she put her arm around his waist and they started walking. As they walked, the defendant held the victim and moved his hand up and down her waistline. The girl asked the defendant what he wanted, and he replied, " 'I just want to play with you.' " She shook her head and said, "No, no," and tried to get away. He told her to be quiet. She eventually broke free and escaped. (*Ibid.*) The Court of Appeal concluded that the victim's testimony "when considered alone falls short of furnishing substantial evidence that the defendant assaulted her with the intent to commit rape." (*Id.* at p. 651.) The conviction could also not be sustained by other evidence in the record. (*Id.* at pp. 652–653.)

#### b. *Puckett*.

In *Puckett*, the defendant followed the 16-year-old victim home as she drove. When she arrived home and exited her vehicle, he ran after her and tried to prevent her from closing the door to her house. The victim's mother intervened, and the defendant

15.

fled but he was soon apprehended by police.  (*Puckett*, *supra*, 44 Cal.App.3d at p. 610.)
The prosecution presented evidence that the defendant had previously either exposed
himself in the presence of girls and women, or had approached girls with improper
suggestions.  In none of the prior instances, however, had the defendant attempted any
physical violence.  (*Ibid.*)  A jury convicted the defendant of assault with intent to
commit rape and attempted first degree burglary.  (*Id.* at pp. 609–610.)

On appeal, the judgment was reversed.  (*Puckett*, *supra*, 44 Cal.App.3d at p. 616.)
In part, the appellate court concluded that there was insufficient evidence to show a
forcible rape had been intended.  (*Puckett*, *supra*, 44 Cal.App.3d at p. 613.)  The *Puckett*
court found that this situation was similar to the facts in *Greene* (summarized above).
(*Puckett*, *supra*, at p. 613.)  Nothing showed that the defendant had intended to have
sexual intercourse by force with the 16-year-old victim.  Although he had chased after
her and pushed the door to her house, it was "not clear" what his motives had been, even
if sexual in nature.  (*Id.* at pp. 613–614.)  Moreover, the evidence from his prior bad acts
had not established a prior intent to rape.  (*Id.* at p. 614.)

Appellant contends that, like the victim in *Greene*, A.S. was "easily able to break
free from [his] grip on her wrist, suggesting that he was not intending to use force."
Appellant further asserts that, like the defendant in *Puckett*, he was "certainly" looking to
engage in some type of unlawful conduct, which was "perhaps" sexual in nature.
However, appellant argues the evidence does not show "that the unlawful conduct was
rape, forcible sodomy, or forcible oral copulation."  We find these arguments
unpersuasive.

Unlike in *Greene* and *Puckett*, the totality of the circumstances in this matter
presents only one reasonable inference—that appellant intended to rape A.S.  His motive
was demonstrated when he entered her bedroom while she was sleeping, he shut her door,
and he never attempted to take any property.  By entering a strange woman's bedroom in
the early morning hours, appellant's actions are very similar to the conduct which the

16.

defendant in *Nye* exhibited. This is a crucial distinction from *Greene* and *Puckett*, making appellant's opinions factually distinguishable.

Based on this record, which we must view in the light most favorable to the judgment, substantial evidence exists from which a reasonable jury could have found appellant guilty beyond a reasonable doubt in count 1 of assault with intent to commit rape, oral copulation or sodomy by force, fear or threats during the commission of a residential burglary in violation of section 220, subdivision (b). This evidence was reasonable, credible and of solid value. Accordingly, sufficient evidence exists to affirm the conviction. (See *People v. D'Arcy*, *supra*, 48 Cal.4th at p. 293.) Consequently, appellant's arguments are without merit, and a reversal is not appropriate.

## II. The Jury Had Sufficient Substantial Evidence To Find Appellant Guilty In Count 4.

Appellant contends that his conviction in count 4, making a criminal threat, must be reversed for insufficient evidence.

### A. Background.

On July 11, 2018, during the second incident at the victims' home, the parents tried to detain appellant while appellant was hiding in a bush in their front yard. Appellant managed to break free from the parents. While appellant was walking away, the father heard appellant make a threat. The father provided different versions of what appellant stated. First, the father testified that appellant yelled, " 'I'll be back. I'm Miguel.' He said, 'I'm going to come back for your son. I'm with the Zetas.' " Later, the father testified that he heard appellant say, " 'I'm Miguel. I'm with the Zetas. I'm gonna [*sic*] be back for your son.' " The father testified that appellant was yelling when he made this threat.

The mother heard appellant say, " 'I came to look for your son on behalf of Miguel.' " She also heard appellant say that he would "come back" and that he was "with the Zetas."

17.

At trial, the father testified that appellant's statements made him feel afraid for his family. He testified that he was still afraid. The father told the jury that he believed appellant. The father knew "Zetas" was a Mexican gang that engaged in drug dealings and kidnappings. The father believed appellant was a member of the Zetas.

In count 4, the jury convicted appellant of making a criminal threat.

## B. Standard of review.

We have already set forth the applicable standard of review to analyze the sufficiency of the evidence. We must view the record in the light most favorable to the judgment and decide whether it contains substantial evidence from which a reasonable finder of fact could make the necessary finding beyond a reasonable doubt. The evidence must be reasonable, credible and of solid value. (*People v. D'Arcy*, *supra*, 48 Cal.4th at p. 293.)

## C. Analysis.

Appellant contends the evidence was insufficient to show that his statement to the father "was unequivocal, unconditional, immediate, and specific" as to convey "a gravity of purpose." He argues that he did not say anything "that actually described or threatened great bodily injury." He asserts that his statement that he would "be back" is "ambiguous at best." Appellant relies on *In re Ricky T.* (2001) 87 Cal.App.4th 1132 (*Ricky T.*).

### 1. A summary of section 422.

In order to find a defendant guilty of making a criminal threat in violation of section 422, the following must be proven:[5]

1. The defendant willfully threatened to commit a crime which will result in death or great bodily injury to another person;

---

[5] The jury in this matter was instructed on these elements with language taken from CALCRIM No. 1300.

18.

2. The defendant made the threat with the specific intent that the statement is to be taken as a threat, even if there is no intent of actually carrying it out;

3. The threat—which may be made verbally, in writing, or by means of an electronic communication device—was on its face and under the circumstances in which it was made so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat;

4. The threat actually caused the person threatened to be in sustained fear for his or her own safety or for his or her immediate family's safety; and

5. The threatened person's fear was reasonable under the circumstances. (§ 422, subd. (a); *In re George T.* (2004) 33 Cal.4th 620, 630; see also CALCRIM No. 1300.)

To qualify as a "threat" under section 422, it is unnecessary for a defendant to actually threaten a specific crime. (*People v. Maciel* (2003) 113 Cal.App.4th 679, 685.) Rather, a defendant need only threaten conduct which will likely result in great bodily injury. (*Ibid.*) An objective reasonableness standard is used to evaluate such a threat, which should be viewed based on all of the surrounding circumstances. (*Id.* at pp. 685–686.)

A threat must be judged in its context. (*Ricky T.*, *supra*, 87 Cal.App.4th at p. 1137.) In evaluating whether a threat falls under section 422, a reviewing court may examine the defendant's history, his mannerisms, affect, and actions involved in making the threat, as well as any subsequent actions which the defendant might have taken. (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1013.) "The point is that all of the circumstances can and should be considered in determining whether a [criminal] threat has been made." (*Id.* at p. 1014.)

On the other hand, "[s]ection 422 was not enacted to punish emotional outbursts, it targets only those who try to instill fear in others. [Citation.]" (*People v. Felix* (2001) 92

19.

Cal.App.4th 905, 913.)  The statute "is not violated by mere angry utterances or ranting soliloquies, however violent.  One may, in private, curse one's enemies, pummel pillows, and shout revenge for real or imagined wrongs—safe from section 422 sanction." (*People v. Teal* (1998) 61 Cal.App.4th 277, 281.)

### 2.    A summary of *Ricky T.*

In *Ricky T.*, the opinion which appellant cites, a teacher accidentally hit a minor with a door as he was opening it.  The minor became angry, cursed the teacher, and said, " 'I'm going to get you.' " (*Ricky T.*, *supra*, 87 Cal.App.4th at p. 1135.)  The teacher sent the minor to the school office.  The teacher said he felt physically threatened by the minor; however, he also said the minor did not make a specific threat or further the act of aggression.  The minor was suspended for five days.  (*Ibid.*)

The following day, an officer interviewed the minor, who admitted speaking angrily, but denied threatening the teacher.  (*Ricky T.*, *supra*, 87 Cal.App.4th at p. 1135.) The minor also admitted " 'getting in [the teacher's] face,' but did not mean to sound threatening.  He said that his actions were not appropriate and he apologized for the incident." (*Ibid.*)

One week later, the officer contacted the minor by telephone and advised him of his *Miranda*[6] rights.  The minor waived his rights and said that on the day of the incident, he told the teacher, " 'I'm going to kick your ass.'  He added, however, that he never made any physical movements or gestures toward [the teacher] to further the threat." (*Ricky T.*, *supra*, 87 Cal.App.4th at p. 1136.)

A juvenile court found that the minor had committed a misdemeanor terrorist threat in violation of section 422.  (*Ricky T.*, *supra*, 87 Cal.App.4th at p. 1135.)  The court adjudged the minor a ward of the court.  The minor was placed on probation with his father.  (*Ibid.*)

---

**6**    *Miranda v. Arizona* (1966) 384 U.S. 436.

The appellate court reversed the judgment. (*Ricky T.*, *supra*, 87 Cal.App.4th at p. 1141.) The appellate court noted there was no evidence to suggest that the minor and teacher "had any prior history of disagreements, or that either had previously quarreled, or addressed contentious, hostile, or offensive remarks to the other." (*Id.* at p. 1138.) There was also no evidence "that a physical confrontation was actually imminent." (*Ibid.*) The appellate court concluded that the minor's "intemperate, rude, and insolent remarks hardly suggest any gravity of purpose; there was no evidence offered that [the minor's] angry words were accompanied by any show of physical violence—nothing indicating any pushing or shoving or other close-up physical confrontation." (*Ibid.*) There was no evidence of any circumstances occurring after this incident to show a threat was made within the meaning of section 422. (*Id.* at p. 1139.)

Finally, the appellate court determined that there was no evidence the teacher felt fear beyond the time of the angry utterances. (*Ricky T.*, *supra*, 87 Cal.App.4th at p. 1140.) The appellate court held that section 422 was not enacted to punish an angry adolescent's utterances unless they otherwise qualify as threats under that statute. (*Ricky T.*, *supra*, at p. 1141.) The minor's statement "was an emotional response to an accident rather than a death threat that induced sustained fear." (*Ibid.*)

### 3. Our conclusions.

*Ricky T.* is distinguishable from the present matter. Appellant had twice targeted the family's daughters. In a span of six days, appellant broke into the victims' home and accosted 19-year-old A.S. in her bedroom, forcing her to defend herself. He then returned and was attempting to enter the bedroom window of 13-year-old C.S. when the father intervened.

Unlike in *Ricky T.*, appellant had just engaged in a physical confrontation with the parents when he made his threat. Appellant began to walk away and he began yelling about a Mexican gang, and he said he would "be back." He referenced the parents' son.

21.

Unlike in *Ricky T.*, appellant's statements were more than a rude or insolent remark. To the contrary, it is clear that appellant made his statements in an effort to frighten and intimidate either the father and/or the mother. When considered along with the rest of appellant's behavior, his threat reasonably suggested he would cause great bodily injury to a member of the family. Although appellant was walking away when he made his threat, the father's sustained fear was objectively reasonable under the totality of the circumstances.

Based on this record, the jury had sufficient evidence to find appellant guilty of making a criminal threat in violation of section 422. The evidence supporting this conviction was reasonable, credible and of solid value. Thus, substantial evidence exists and it is not appropriate to reverse the conviction in count 4. Appellant's arguments are without merit and this claim fails.

## III.     Appellant Does Not Establish Ineffective Assistance Of Counsel.

At sentencing, the trial court ordered appellant to pay certain fees, fines and assessments in both Madera Superior Court case Nos. MCR059778 and MCR059042. Appellant contends he received ineffective assistance when his trial counsel failed to object to the imposition of these financial obligations.

### A.     Background.

At sentencing the trial court imposed fees, fines and assessments upon appellant that total approximately $4,008.29. The obligations included the following:

1.     In both cases, a minimum restitution fine of $300 (§ 1202.4, subd. (b)(1));

2.     An aggregate $200 court operations assessment (§ 1465.8, subd. (a)(1));

3.     An aggregate $150 criminal conviction assessment (Gov. Code, § 70373, subd. (a)(1));

4.     An aggregate fine of $1,990 pursuant to section 672;[7] and

---

[7]     Pursuant to section 672, a sentencing court "may impose a fine on the offender not exceeding one thousand dollars ($1,000) in cases of misdemeanors or ten thousand

5. An aggregate fine of $1,230 pursuant to section 290.3, subdivision (a).[8]

It is undisputed that appellant's trial counsel did not object when these various fees, fines and assessments were imposed, and his counsel did not request a hearing regarding appellant's ability to pay.

## B. Standard of review.

Under the federal and state constitutions, a criminal defendant is entitled to the effective assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *People v. Ledesma* (1987) 43 Cal.3d 171, 215.) To prevail on a claim of ineffective assistance of counsel, a defendant must establish two criteria: (1) counsel's performance fell below an objective standard of reasonable competence and (2) the defendant was prejudiced. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688.) The defendant has the burden of showing both deficient performance and resulting prejudice. (*People v. Lucas* (1995) 12 Cal.4th 415, 436.)

## C. Analysis.

Appellant asserts that he received ineffective assistance. He contends his trial counsel should have raised an objection under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). Appellant also maintains his trial counsel should have known that a statutory obligation existed to object to the imposition of some of these financial

---

dollars ($10,000) in cases of felonies," following a conviction of any crime punishable in any jail or prison "in relation to which no fine is herein prescribed."

[8] Section 290.3 directs a sentencing court to impose a fine of $300 for the first conviction of certain sex offenses specified in section 290, subdivision (c), and a $500 fine is imposed upon a second and any subsequent conviction, "unless the court determines that the defendant does not have the ability to pay the fine." (§ 290.3, subd. (a).)

obligations pursuant to sections 290.3 and 1202.5,[9] and former Government Code section 29550.2.[10]

Appellant argues that his trial counsel could have had no tactical reason for not objecting to the imposition of the fees, fines and assessments, and he contends he suffered prejudice. According to appellant, he worked seasonally earning $700 to $800 per week. Based on limited potential prison wages, he asserts he will be unable to repay the financial obligations imposed against him. He maintains that, had his trial counsel alerted the trial court about an "ability-to-pay requirement," the court would have either reduced or eliminated the fees and fines. Appellant asks this court to vacate the fees and fines pursuant to *Dueñas*.

The parties dispute how we should analyze appellant's underlying constitutional challenge. In part, respondent argues that this claim fails because appellant's restitution fine was not unconstitutionally excessive under the excessive fines clause of the Eighth Amendment of the United States Constitution. In reply, appellant contends that his *Dueñas* claim only raises a due process challenge based on the Fourteenth Amendment of the United States Constitution, and he is not raising a constitutional challenge under the Eighth Amendment.

---

[9] Section 1202.5 directs a sentencing court to impose a fine of $10 if a defendant is convicted of certain enumerated crimes, including burglary under section 459. (§ 1202.5, subd. (a).) Section 1202.5 permits a court to consider a defendant's ability to pay. (*Ibid*.) "In making a determination of whether a defendant has the ability to pay, the court shall take into account the amount of any other fine imposed upon the defendant and any amount the defendant has been ordered to pay in restitution." (*Ibid.*)

[10] Former Government Code section 29550.2 made a person subject to a "criminal justice administration fee" for administration costs incurred in conjunction with the arresting and booking of that person if he or she was convicted of any criminal offense related to the arrest and booking. (Former Gov. Code, § 29550.2, subd. (a).) A sentencing court had authority to consider whether the person had the ability to pay. (*Ibid.*) This section was repealed by Assembly Bill No. 1869 effective July 1, 2021.

We need not fully respond to the parties' disputed points regarding whether or not it is proper to resolve the underlying *Dueñas* claim based on the Eighth Amendment, or whether we should simply analyze due process. Instead, appellant did not raise this claim under the Eighth Amendment of the United States Constitution. Therefore, we decline to address respondent's arguments regarding the excessive fines clause.

We will resolve this claim as it was presented; whether or not appellant received ineffective assistance of counsel. After summarizing *Dueñas*, we conclude that appellant does not demonstrate ineffective assistance. Appellant's trial counsel may have made a tactical decision not to raise an objection based on *Dueñas*. In any event, any presumed constitutional error is harmless.

### 1.    *Dueñas*.

In *Dueñas*, the defendant was an indigent, homeless mother of two, who subsisted on public aid while suffering from cerebral palsy. She had dropped out of high school because of her illness, and she was unemployed. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1160–1161.) As a teenager, the defendant's driver's license was suspended when she could not pay some citations. (*Id.* at p. 1161.) She then was convicted of a series of misdemeanor offenses for driving with a suspended license, and in each case, she was given the choice to pay mandatory fees and fines, which she lacked the means to do, or go to jail. (*Ibid.*) She served jail time in the first three of these cases, but still faced outstanding debt, which increased with each conviction. (*Ibid.*)

After her fourth conviction of driving with a suspended license, the defendant was placed on probation and again ordered to pay mandatory fees and fines. The court imposed a $30 criminal conviction assessment (Gov. Code, § 70373, subd. (a)(1)); a $40 court operations assessment (§ 1465.8, subd. (a)(1)); and a minimum $150 restitution fine

25.

(§ 1202.4, subd. (b)(1)).[11] The court also imposed and stayed a probation revocation restitution fine (§ 1202.44). (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1161–1162.) The defendant challenged the fees and fines imposed under sections 1202.4 and 1465.8, and Government Code section 70373. (*Dueñas*, at p. 1164.) The trial court rejected her constitutional arguments that due process and equal protection required the court to consider her ability to pay these fines and assessments. (*Id.* at p. 1163.) On appeal, however, the *Dueñas* court determined that the defendant's due process rights had been infringed. According to *Dueñas*, an ability to pay hearing was required so the defendant's "present ability to pay" could be determined before assessments were levied for a court operations assessment (§ 1465.8, subd. (a)(1)) and a criminal conviction assessment (Gov. Code, § 70373, subd. (a)(1)). (*Dueñas*, at p. 1164.) The *Dueñas* court also concluded that the minimum restitution fine of $150 (§ 1202.4, subd. (b)(1)) had to be stayed. The appellate court reached that conclusion despite section 1202.4 barring consideration of a defendant's ability to pay unless the judge is considering a fine over the statutory minimum. (§ 1202.4, subd. (c).) *Dueñas* held that "execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Dueñas*, at p. 1164.)

### 2. Appellant's trial counsel may have made a tactical decision.

To establish ineffective assistance based on a trial record, the defendant must show that the record affirmatively discloses trial counsel had no rational tactical purpose for the challenged act or omission. (*People v. Hoyt* (2020) 8 Cal.5th 892, 958.) The defendant must show that his or her trial counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. " 'All other claims

---

[11] The minimum restitution fine for a misdemeanor is $150. The minimum restitution fine for a felony is $300. (§ 1202.4, subd. (b)(1).)

26.

of ineffective assistance are more appropriately resolved in a habeas corpus proceeding.' [Citation.]" (*Ibid.*)

Here, appellant's trial counsel was not asked for an explanation. As such, this claim on direct appeal must be rejected unless there can be no satisfactory explanation for his alleged failure to object to the imposition of the financial obligations. It appears that satisfactory explanations exist.

In contrast to the probationer in *Dueñas*, appellant's incarceration was not a consequence of prior criminal assessments and fines. Appellant was not caught in an unfair cycle. Instead, appellant engaged in purposeful criminal behavior, and he could have avoided the present convictions regardless of his financial circumstances.

Moreover, the probationer in *Dueñas* had presented compelling evidence that the imposed assessments *had resulted* in ongoing unintended punitive consequences. In contrast, although appellant could suffer any number of future unintended consequences, mere speculation does not establish a present constitutional infirmity. (See *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [hypothetical situations are insufficient to establish a statute is facially unconstitutional].)

*Dueñas* is distinguishable from appellant's situation, and it has no application in this matter. (See *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1054–1055 (*Lowery*); *People v. Caceres* (2019) 39 Cal.App.5th 917, 928–929 [declining to apply *Dueñas*'s "broad holding" beyond its unique facts]; *People v. Johnson* (2019) 35 Cal.App.5th 134, 138 ["*Dueñas* is distinguishable"].) Because *Dueñas* is inapplicable in this matter, it is reasonable to infer that appellant's trial counsel may have decided that any objection based on *Dueñas* would be meritless. In addition, the trial court imposed minimum restitution fines. Based on his prior dealings in that particular court, appellant's trial counsel may have known that it was pointless to request any further reduction of the total fees, fines and restitution.

Based on this limited record, appellant has not shown that his trial counsel's performance fell below an objective standard of reasonable competence. We cannot declare that no satisfactory explanations exist for trial counsel's failure to seek further reduction of the fees, fines and assessments imposed against appellant. Thus, this ineffective assistance claim on direct appeal must fail. (See *People v. Hoyt*, *supra*, 8 Cal.5th at p. 958.) In any event, we also determine that any presumed constitutional error is harmless.

### 3. Any presumed constitutional error is harmless.

Unlike the *Dueñas* probationer, appellant was sentenced to an aggregate determinate prison term of seven years four months, and an indeterminate term of life with the possibility of parole. Nothing in this record reasonably suggests he might be unable to work, or he might be ineligible for prison work assignments. As such, we can infer he will have the opportunity to earn prison wages. Moreover, once he is released from custody, appellant will have the ability to again earn wages. Although it will undoubtedly take him time, nothing reasonably implies that appellant cannot begin repaying the imposed financial obligations. (See *Lowery*, *supra*, 43 Cal.App.5th at p. 1060; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076; *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837 [ability to pay includes a defendant's prison wages].)

Finally, unlike the probationer in *Dueñas*, appellant has not been repeatedly incarcerated because of his financial status. Thus, any presumed constitutional error, especially at this juncture, is harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24.) Therefore, appellant's underlying due process challenge based on *Dueñas* is without merit. As a result, appellant fails to demonstrate that he was prejudiced. Accordingly, he has not shown that he received ineffective assistance of counsel. (See *Strickland v. Washington*, *supra*, 466 U.S. at pp. 687–688; *People v. Lucas*, *supra*, 12 Cal.4th at p. 436.) This claim must be rejected.

28.

**IV.    The Conviction In Count 2 Must Be Reversed In Case No. MCR059778, And That Charge Dismissed, Because It Is A Lesser Included Offense To Count 1.**

In count 1 in case No. MCR059778, the jury convicted appellant of assault with intent to commit rape, oral copulation or sodomy by force, fear or threats during the commission of a residential burglary on July 5, 2018, in violation of section 220, subdivision (b).  The court sentenced appellant to state prison for life with the possibility of parole.  In count 2 in that same case, the jury convicted appellant of first degree residential burglary on July 5, 2018, in violation of section 459.  For this conviction, appellant received an upper prison term of six years, which was stayed pursuant to section 654.

The parties agree, as do we, that count 2 must be dismissed because it is a lesser included offense to the charge in count 1.

Applying the statutory elements test, the court in *People v. Dyser* (2012) 202 Cal.App.4th 1015, determined that first degree residential burglary is a lesser included offense to assault with intent to commit a specified sex crime during a first degree burglary.  (*Id.* at pp. 1020–1021.)  Thus, any such conviction for residential burglary must be dismissed.  (*Id.* at p. 1021.)  When a defendant is found guilty of both the greater and lesser included offense arising out of the same act or course of conduct, the greater offense is controlling and the lesser included offense must be reversed.  (*People v. Sanders* (2012) 55 Cal.4th 731, 736.)

Here, appellant broke into the victims' home on July 5, 2018, with the intent to rape A.S., and he assaulted her in her bedroom.  As such, it is abundantly clear that the residential burglary in count 2 is a lesser included charge to the assault in count 1.  (See *People v. Dyser*, *supra*, 202 Cal.App.4th at pp. 1020–1021.)  Accordingly, we will vacate appellant's conviction in count 2 and remand for resentencing.

**V.**     **Based On Assembly Bill No. 1869, We Will Vacate The Unpaid Balance From The Fee Imposed Pursuant To Former Government Code Section 29550.2.**

As part of appellant's sentence on February 25, 2020, he was ordered to pay a $108.19 criminal justice administration fee pursuant to former Government Code section 29550.2, subdivision (a).  This fee was imposed in case No. MCR059778.  The imposition of this fee does not appear on either the determinate or the indeterminate abstracts of judgment.  However, it does appear on the trial court's minute order dated February 25, 2020, as part of the sentence imposed in case No. MCR059778.

Effective July 1, 2021, Assembly Bill No. 1869 (2019–2020 Reg. Sess.) (Assembly Bill 1869) eliminated the criminal justice administration fee that was imposed against appellant pursuant to former Government Code section 29550.2.  (See Gov. Code, § 6111, subd. (a).)  As of July 1, 2021, this fee "is unenforceable and uncollectible and any portion of a judgment imposing [it] shall be vacated."  (*Ibid*.)

In supplemental briefing, appellant contends that this change in law should retroactively apply to him.  He asks this court to vacate this fee.

Respondent opposes appellant's request.  According to respondent, striking this fee "is not the remedy provided by the bill."  Instead, respondent contends this fee will automatically become uncollectable starting July 1, 2021.  Respondent asserts this court should not become involved in this process.

We conclude that appellant has the better argument, and we will vacate any unpaid balance of this fee from his judgment.  A recent opinion demonstrates why it is proper to vacate this fee.

In *People v. Clark* (2021) 67 Cal.App.5th 248 (*Clark*), the First District Court of Appeal, Division Four, addressed similar arguments involving section 1465.9, subdivision (a), which was also enacted by Assembly Bill 1869.  Section 1465.9,

subdivision (a), eliminated, in part, a probation supervision fee[12] under former section 1203.1b, subdivision (a).  (§ 1465.9, subd. (a); *Clark*, *supra*, 67 Cal.App.5th at p. 259.)

Identical to the language before us in Government Code section 6111, section 1465.9[13] renders its fees "unenforceable and uncollectible" as of July 1, 2021, "and any portion of a judgment imposing those costs shall be vacated."  (Cf. § 1465.9, subd. (a); Gov. Code, § 6111, subd. (a).)

The *Clark* court concluded that, after July 1, 2021, the plain language of section 1465.9, subdivision (a), means a defendant is statutorily entitled to have any such fees vacated even though they are no longer collectible.  "The language of the statute is mandatory (i.e., 'shall be vacated')."  (*Clark*, *supra*, 67 Cal.App.5th at p. 259.)  The *Clark* court noted that "[p]erhaps the Legislature provided for this additional form of relief because it understood that even uncollectible debts can burden an individual or family, but regardless of its purpose, the import of this provision is clear."  (*Id.* at p. 260.)

We find *Clark* to be well-reasoned and persuasive regarding its analysis of section 1465.9.  Its analysis applies equally to Government Code section 6111, which was also enacted under Assembly Bill 1869 and which tracks the exact same relevant language as section 1465.9.

---

[12]    Under former section 1203.1b, a probation officer could request reimbursement for the "reasonable cost of any probation supervision, conditional sentence, or term of mandatory supervision, of conducting any preplea investigation and preparing any preplea report pursuant to Section 1203.7, of conducting any presentence investigation and preparing any presentence report made pursuant to Section 1203, and of processing a jurisdictional transfer pursuant to Section 1203.9 or of processing a request for interstate compact supervision pursuant to Sections 11175 to 11179, inclusive, whichever applies." (Former § 1203.1b, subd. (a).)

[13]    The relevant portion of this statute reads:  "The balance of any court-imposed costs pursuant to Section 987.4, subdivision (a) of Section 987.5, Sections 987.8, 1203, 1203.1e, 1203.016, 1203.018, 1203.1b, 1208.2, 1210.15, 1463.07, 3010.8, 4024.2, and 6266, as those sections read on June 30, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (§ 1465.9, subd. (a).)

Based on the plain language of Government Code section 6111, appellant is entitled to have vacated any unpaid balance of the $108.19 criminal justice administration fee (former Gov. Code, § 29550.2) that was imposed against him. (Gov. Code, § 6111, subd. (a).) Consequently, we will order this fee to be vacated.

## VI. Based On Senate Bill 567, Appellant's Sentence Must Be Vacated And This Matter Remanded For Resentencing.

In count 3, appellant received an upper term prison sentence of six years for first degree burglary. In count 2, appellant also received an upper term prison sentence of six years for first degree burglary. The sentence in count 2 was stayed pursuant to section 654.

Via supplemental briefing, the parties agree, as do we, that appellant must be resentenced in light of Senate Bill 567.[14] This bill amends section 1170 by making the middle term the presumptive sentence for a term of imprisonment unless certain circumstances exist. (Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1) & (2).) Under this change in law, a trial court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon

---

[14] Appellant also asserts that his upper term sentences in counts 2 and 3 must be vacated in light of Assembly Bill No. 124 (2021–2022 Reg. Sess.) (Assembly Bill 124). In general, this bill creates a presumption in favor of a low prison term, in part, when a defendant is under 26 years of age at the time of the offense. (Stats. 2021, ch. 695, § 4, adding § 1016.7; Stats. 2021, ch. 695, § 5, adding § 1170, subd. (b)(2)(B).) Respondent does not address Assembly Bill 124. Instead, respondent concedes that appellant must be resentenced in light of Senate Bill 567. Because appellant must otherwise be resentenced, we need not address Assembly Bill 124 in this appeal.

request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements. The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense."[15] (Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1) & (2).)

Senate Bill 567 will become effective on January 1, 2022. Except when passed as an urgency measure, a statute enacted at a regular session of the Legislature generally becomes effective on January 1 of the year following its enactment. (Cal. Const., art. IV, § 8, subd. (c); Gov. Code, § 9600, subd. (a).)

Respondent concedes that, when Senate Bill 567 goes into effect, appellant's judgment will likely not be final. Respondent further concedes that this change in law will apply retroactively to appellant. (See *In re Estrada* (1965) 63 Cal.2d 740, 742.) We agree with respondent in both regards.

"We are to assume, absent evidence to the contrary, that the Legislature intended an 'amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date.' " (*People v. Lopez* (2019) 42 Cal.App.5th 337, 341, quoting *People v. Brown* (2012) 54 Cal.4th 314, 323.) A final judgment will not occur in this matter until 30 days after this opinion is issued. (Cal. Rules of Court, rule 8.366(b)(1).) If one or more parties file a petition for rehearing, the date of finality will be extended further. (Cal. Rules of Court, rule 8.268(b)(1)(A).) The parties will have 10 days after this decision becomes final to petition for review in the California Supreme Court. (Cal. Rules of Court, rule 8.500(e)(1).) Only after a petition for review has been adjudicated in the state court of last resort can a party then petition for a writ of certiorari in the United States Supreme Court. (U.S. Supreme Ct. Rules, rule 13(1) & (3).) "For the purpose of

---

**15** A sentencing judge may also rely on certified records of a defendant's prior convictions in determining the sentence to impose without submitting the prior convictions to a jury. This, however, does not apply to enhancements imposed on prior convictions. (Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(3).)

determining the retroactive application of an amendment to a criminal statute, the finality of a judgment is extended until the time has passed for petitioning for a writ of certiorari in the United States Supreme Court." (*People v. Lopez, supra*, 42 Cal.App.5th at pp. 341–342, citing *People v. Vieira* (2005) 35 Cal.4th 264, 305–306.)

It is clear that appellant will not exhaust his appeal rights before January 1, 2022. As such, he benefits from Senate Bill 567. Consequently, we will vacate appellant's sentence and remand this matter for resentencing.

## DISPOSITION

Appellant's sentence is vacated and this matter is remanded for resentencing. In case No. MCR059778, the conviction in count 2 is vacated and that charge is dismissed as a lesser included offense of count 1. We vacate any unpaid balance of the $108.19 booking fee imposed under former Government Code section 29550.2. Following resentencing, the trial court shall forward amended abstracts of judgment to the appropriate authorities. In all other respects, the judgment is affirmed.

LEVY, Acting P. J.

WE CONCUR:

DETJEN, J.

FRANSON, J.

34.