Filed 10/28/24  P. v. Tribbey-Braggs CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAMIL AQUAN TRIBBEY-BRAGGS,<br><br>Defendant and Appellant. | C098974<br><br>(Super. Ct. No. 22FE001457) |

A jury found defendant Jamil Aquan Tribbey-Braggs guilty of sexual penetration by force, assault with intent to commit rape and/or forcible sexual penetration, and possession of a firearm by a prohibited person.  The trial court sentenced him to 12 years eight months in prison.

1

On appeal, Tribbey-Braggs argues that his assault conviction must be reversed because either it is a lesser-included offense of sexual penetration by force or there was insufficient evidence to support a finding that he intended to rape the victim. He additionally contends that the trial court misapplied the law when it imposed full consecutive sentences for the sexual penetration and assault convictions under Penal Code section 667.6.[1] We reject Tribbey-Braggs's challenges to his assault conviction but agree with him that a remand for resentencing is required.

BACKGROUND

The People charged Tribbey-Braggs with forcible sexual penetration with a foreign object (§ 289, subd. (a)(1); count one); assault with intent to commit rape and/or unlawful sexual penetration (§ 220; count two); and possession of a firearm by a prohibited person (§ 29800, subd. (a)(1); count three). The prosecution alleged as aggravating factors that the crimes involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness and that the victim was particularly vulnerable.

The victim testified at trial. On the night of the attack, she and her boyfriend were helping friends move some furniture from Goodwill. The victim stayed with one of the group's cars, a BMW, while the others dropped the furniture off. She eventually fell asleep in the front passenger seat.

At some point, a black car drove by. The driver appeared to be "trying to see if there was anyone in" the BMW. The black car immediately circled back and drove by again. The victim was able to see the driver and identified him as Tribbey-Braggs.

A minute or two later, Tribbey-Braggs ran up and got in the BMW. He leaned over the center console, pinned the victim's arms down with his body weight, and told her she would not get hurt if she "just let him do it." She screamed, and he hit her in the

_____

[1] Undesignated statutory references are to the Penal Code.

2

head multiple times. He grabbed at her shirt and tried to pull her pants down. She tried to use her knees to push him away. Tribbey-Braggs inserted his finger in her vagina. He got out of the car, and the victim tried to get her phone to call 911.

Less than a minute later, Tribbey-Braggs returned. He hit the victim again and placed his mouth on her exposed breast. He told her to "just be quiet and let him do it." The victim grabbed a pair of scissors, and the two struggled over the scissors. At one point, Tribbey-Braggs had the scissors touching the victim's neck, although he did not cut her. They dropped the scissors, and Tribbey-Braggs again retreated from the car.

A minute or two later, Tribbey-Braggs returned. He was outside the car with his hand in his sweatshirt pocket and said he had a gun. Tribbey-Braggs told the victim that he would shoot her if she did not "let him do it"; the victim started crying and begged him not to shoot her. He left again.

The victim retrieved her phone and called 911. Tribbey-Braggs started to return to the car again, but the victim yelled at him and he ran away. In total, the four encounters with Tribbey-Braggs took place over about 10 minutes. The victim said she was scared that Tribbey-Braggs was going to rape her because "[h]e said that's what he was there for." In her call to 911, a recording of which was played for the jury, she reported that "someone just tried to rape me."

In an interview with a responding deputy sheriff, the victim said Tribbey-Braggs had tried to rape her when she was sleeping in a car. She explained that he pulled her pants down and inserted his fingers in her. Tribbey-Braggs told her to "stop screaming, just let him do it." He made a similar statement when the two were struggling over the scissors, saying "he was gonna . . . stab" the victim if she did not "just let him do what he wanted."

A medical exam showed that the victim sustained injuries to her head, jaw, right arm, and breasts. When deputies arrested Tribbey-Braggs, he was carrying a handgun.

3

A criminalist testified that she found Tribbey-Braggs's DNA on the victim's left breast and cheek.  His blood was found inside the car.  The criminalist acknowledged that DNA could be transferred if the victim touched Tribbey-Braggs and then touched herself; DNA could also fly through the air.  But the criminalist noted that such a transfer would be unlikely to result in DNA in the concentrations found on the victim's body.

Tribbey-Braggs testified in his own defense.  He acknowledged that he was at Goodwill the night of the attack but denied sexually assaulting the victim.  He said that someone had broken into his car earlier that evening, and he thought the BMW at Goodwill looked like a vehicle he thought was involved.  He approached the BMW hoping to catch the culprit with his stolen possessions.  He confronted the victim, telling her, "I'm gonna come in if you don't get out" and saying that he was going to "come in and take my stuff back anyway because I know that you guys broke into my car."  He was certain that they had broken into his car because he saw some of his belongings on the car floorboard.  He got in the car and pushed the victim to the side while he searched the car, saying, "I'm not trying to hurt you.  If you would just let me do it, do you know what I mean, then I – I will be out of here quick."  When he said, "let me do it," he meant he wanted to search the car.

He got out of the car and then returned because he wanted to check the rest of the car for his possessions.  While he was searching the back, he and the victim fought over a pair of scissors, and Tribbey-Braggs spat at her and slapped her.  He realized there was a cut on his hand and left the car.

He returned to the car again because he "felt bad" and wanted to apologize.  As he approached, the victim said she was calling the police, so he walked away instead.  He never had any intent to sexually assault her.

A detective interviewed Tribbey-Braggs after his arrest.  Tribbey-Braggs told the detective that he had not been at Goodwill that night and denied ever seeing the victim.  He "had no idea" about the victim's sexual assault at Goodwill and told the detective he

had been drinking so much that he did not remember anything. Later, he recalled getting in a fight and trying to get someone out of a car. He did not mention anyone breaking into his car in the interview. Tribbey-Braggs said he was not being honest with the detective because he felt the detective was not there to help him. During the interview, he wrote a letter to the victim, saying he hoped she would realize that he had "a good heart." He also said he had been under the influence and apologized for attacking her.

Tribbey-Braggs's girlfriend testified that his car had been broken into before but could not recall any time when he had driven around to find the culprits. She was not with him at Goodwill on the night of the attack.

The jury found Tribbey-Braggs guilty on all counts. With respect to the assault conviction, the verdict did not specify whether the jury found that Tribbey-Braggs intended to commit sexual penetration or whether he intended to commit rape. The jury found true the aggravating circumstances that the victim was particularly vulnerable as to both counts and that the crime involved a threat of great bodily harm as to the assault count. The trial court sentenced Tribbey-Braggs to 12 years eight months in prison.

Tribbey-Braggs filed a timely notice of appeal.

DISCUSSION

I.

Tribbey-Braggs first contends that, to the extent his assault conviction was premised on a finding that he intended to commit forcible sexual penetration, he cannot be convicted of both that offense and forcible sexual penetration because, he argues, the former is a lesser-included offense of the latter. We disagree.

A.

The trial court instructed the jury on forcible sexual penetration (§ 289) with CALCRIM No. 1045 as follows, in part:

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant committed an act of sexual penetration with another person;

5

"2. The penetration was accomplished by using a foreign object;

"3. The other person did not consent to the act;

"AND

"4. The defendant accomplished the act by force, violence, menace, or fear of immediate and unlawful bodily injury to another person. [¶] . . . [¶]

"An act is accomplished by force if a person uses enough physical force to overcome the other person's will. [¶] Menace means a threat, statement, or act showing an intent to injure someone. [¶] An act is accomplished by fear if the other person is actually and reasonably afraid or she is actually but unreasonably afraid and the defendant knows of her fear and takes advantage of it." (Italics omitted.)

As to assault with intent to commit sexual penetration or rape (§ 220), the jury was instructed with CALCRIM No. 890 as follows, in part:

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant did an act that by its nature would directly and probably result in the application of force to a person;

"2. The defendant did that act willfully;

"3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;

"4. When the defendant acted, he ha[d] the present ability to apply force to a person;

"AND

"5. When the defendant acted, he intended to commit rape and/or sexual penetration. [¶] . . . [¶]

"The terms application of force and apply force mean to touch in a harmful or offensive manner. The slightest touching can be enough if it is done in a rude or angry way. Making contact with another person, including through her clothing, is enough.

6

The touching does not have to cause pain or injury of any kind." (Italics omitted.) The instruction directed the jury to the instructions for rape and sexual penetration to assess intent (CALCRIM Nos. 1000, 1045). The trial court also read a unanimity instruction, CALCRIM No. 3500, which required the jury to agree which act(s) Tribbey-Braggs had committed in counts one and two.

B.

"In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged." ' " (*People v. Reed* (2006) 38 Cal.4th 1224, 1226.) "A judicially created exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.' [Citation.] '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' " (*Id*. at p. 1227.)

Courts typically apply one of two tests "in determining whether an uncharged offense is necessarily included within a charged offense: the 'elements' test and the 'accusatory pleading' test. Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former." (*People v. Reed*, *supra*, 38 Cal.4th at pp. 1227-1228.) In other words, courts must evaluate whether " ' "the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." ' " (*People v. Sanchez* (2001) 24 Cal.4th 983, 988.) "Courts should consider the statutory elements and accusatory pleading in deciding whether a defendant received notice, and therefore may be convicted, of an

7

*uncharged* crime, but only the statutory elements in deciding whether a defendant may be convicted of multiple *charged* crimes." (*People v. Reed*, *supra*, at p. 1231.)

Based on the elements of the two offenses at issue here, a defendant may commit forcible sexual penetration in violation of section 289, subdivision (a) without also necessarily committing assault with the intent to commit sexual penetration in violation of section 220, subdivision (a)(1). Section 220, subdivision (a)(1) requires an assault, which is statutorily defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240 [statutory definition of "assault"].) The essential element of assault is the intent to use force against the victim. (*People v. Leal* (2009) 180 Cal.App.4th 782, 793.) Section 289, subdivision (a), on the other hand, forbids "sexual penetration when the act is accomplished against the victim's will by means of force, violence, *duress*, menace, or fear of immediate and unlawful bodily injury on the victim or another person." (Italics added.) Forcible sexual penetration may occur with verbal or psychological coercion only. (See *People v. Senior* (1992) 3 Cal.App.4th 765, 775 [discussing duress].) Thus, an attempt to commit a violent injury, or even a threat of violent injury, is not required by section 289. Because forcible sexual penetration in violation of section 289, subdivision (a) can be committed by psychological coercion alone, assault in violation of section 220, subdivision (a)(1) is not a lesser-included offense of sexual penetration under the elements test.

Tribbey-Braggs argues that under the accusatory pleading test, the amended information alleged overlapping facts such that the assault with intent to commit sexual penetration was necessarily included within the forcible sexual penetration count. As noted above, however, we apply the statutory elements test, rather than the accusatory pleading test, when assessing whether charged, as opposed to uncharged, offenses are lesser-included offenses. (*People v. Reed*, *supra*, 38 Cal.4th at pp. 1229-1230.) This is because "[t]he accusatory pleading test arose to ensure that defendants receive notice before they can be convicted of an uncharged crime." (*Id.* at p. 1229.) " 'Because a

defendant is entitled to notice of the charges, it makes sense to look to the accusatory pleading (as well as the elements of the crimes) in deciding whether a defendant had adequate notice of an uncharged lesser offense so as to permit conviction of that uncharged offense.' [Citation.]  But this purpose has no relevance to deciding whether a defendant may be convicted of multiple charged offenses. . . . 'Concerns about notice are irrelevant when both offenses are separately charged.' " (*Id*. at pp. 1229-1230.)  In this case, the two offenses were separately charged.  The statutory elements test therefore applies.  And because the statutory elements of section 289, subdivision (a) do not necessarily include all of the elements of section 220, subdivision (a)(1), Tribbey-Braggs could be convicted of both offenses.

## II.

Tribbey-Braggs next contends that, to the extent his assault conviction was based on the jury finding that he intended to commit rape, there was insufficient evidence to support a finding that he intended to accomplish an act of sexual intercourse.  We reject this argument as well.

## A.

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citations.]  The same standard applies when the conviction rests primarily on circumstantial evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  " 'We do not reweigh evidence or reevaluate a witness's credibility.' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)  Before a verdict may be set aside for insufficiency of the evidence, a party must demonstrate " 'that upon no

hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

"Assault with intent to commit forcible rape requires an intent to and an unlawful attempt to have sexual intercourse by force, violence or fear of bodily injury, without consent of the victim." (*People v. Dixon* (1999) 75 Cal.App.4th 935, 942.) " 'The specific intent with which an act is done may be shown by a defendant's statement of his intent and by the circumstances surrounding the commission of the act.' [Citation.] 'In objectively assessing a defendant's state of mind during an encounter with a victim, the trier of fact may draw inferences from his conduct, including any words the defendant has spoken.' " (*People v. Craig* (1994) 25 Cal.App.4th 1593, 1597.)

B.

The evidence of Tribbey-Braggs's conduct and words is sufficient to support a finding that he intended to rape the victim. While striking the victim's head and pinning her against her seat, he attempted to remove her clothes, including her pants, and pulled at her shirt. He inserted his finger in her vagina in his first attack and placed his mouth on her exposed breast in the second. In the third encounter, he threatened her, telling her he would shoot her if she did not "let him do it." In the first two encounters, he made similar statements, telling the victim she would not get hurt if she "just let him do it" and to "just be quiet and let him do it." These actions and statements provided a sufficient basis for the jury to find that Tribbey-Braggs intended to accomplish forcible sexual intercourse. (See *People v. Craig*, *supra*, 25 Cal.App.4th at p. 1600 [reasoning that similar statements supported finding of intent to commit rape].)

We do not find analogous either of the cases Tribbey-Braggs cites. In *People v. Greene* (1973) 34 Cal.App.3d 622, 650, the victim was walking home at night when the defendant walked past, turned her around, and put his arm around her waist. He told the victim that he had a gun, said " 'I just want to play with you,' " and moved his hand up and down her waistline. (*Ibid*.) The victim broke free without a struggle after walking

10

past a couple of houses, screamed, and ran to a friend's house. (*Ibid.*) At trial, the victim said she was afraid she would be raped. (*Id*. at p. 651.) The appellate court found insufficient evidence of an intent to commit rape, reasoning that the defendant's unwanted touching of the victim was attributable to an intent short of forcible sexual intercourse. (*Id.* at pp. 651-652.)

In *People v. Puckett* (1975) 44 Cal.App.3d 607, 614, the appellate court also found the evidence insufficient to prove the defendant intended to rape the victim. In that case, the victim was driving home when the defendant, who was driving behind her, flashed his headlights to attract her attention. (*Id.* at p. 610.) He followed her home and tried to stop her from closing the door to her house when she tried to run inside. (*Ibid.*) The court reasoned that this evidence, in addition to evidence of prior incidents of the defendant's lewd conduct, was not enough to establish the requisite intent. (*Id.* at p. 614.)

The evidence in this case is different. Unlike the facts in those cases, the evidence at trial showed that Tribbey-Braggs entered the victim's car, struck her, attempted to remove her clothes, digitally penetrated her vagina, placed his mouth on her exposed breast, and repeatedly directed her to "let him do it." *Greene* and *Puckett* thus do not support Tribbey-Braggs's challenge.

### III.

Finally, Tribbey-Braggs asserts that the trial court erred when it sentenced him to full consecutive sentences on counts one and two. He argues that the court committed legal error by concluding that it was required to impose full consecutive sentences, even though subdivision (c) of section 667.6 gives trial courts discretion to impose consecutive or concurrent terms. On this point, we agree with Tribbey-Braggs.

### A.

Before sentencing, the probation officer submitted a report recommending full consecutive sentences under section 667.6, subdivision (c) for the sexual penetration and assault with intent to commit a specified sex offense convictions. At the sentencing

11

hearing, the trial court noted that it had read and considered the report. The court then stated that it intended to impose a sentence of 12 years eight months, saying: "This is a sentencing under Penal Code section 667.6, which requires full consecutive." The court then stated that it intended to impose the upper term of eight years on the forcible sexual penetration count; the middle term of four years on the assault conviction, "fully consecutive under Penal Code section 667.6"; and one-third the middle term on the firearms offense.

The prosecution argued that full consecutive sentences were appropriate under section 667.6, subdivision (c) and requested an upper-term sentence for each of the sex offense counts. Defense counsel asked for the lower or middle term sentence for the sexual penetration count based on Tribbey-Braggs's limited prior record, past trauma, and substance abuse issues. Defense counsel did not argue the sentences should not be consecutive.

The trial court imposed its indicated sentence. It reasoned: "I think there are offsetting factors, there are certainly aggravating factors the juror[s] found too. As [the prosecutor] said, this was a series of assaults over a period of time. There was a break between each of the incidents that would have allowed the defendant to change his mind and discontinue the conduct. [¶] But the probation report and the letter submitted do show some mitigating factors. [¶] . . . [¶] Those are mitigating factors that I considered in the balance. I think the upper term on Count One is appropriate given the aggravating factor found by the jury and the other factors I just noted." The court further stated, "Count Two, a violation of Penal Code section 220, I'm imposing the middle term of four years, but that is full consecutive under Penal Code section 667.6. And Count Three, possession of a firearm having previously been convicted of a felony, I'm imposing the standard one-third the mid term of eight months for an aggregate sentence of 12 years, 8 months."

After calculating Tribbey-Braggs's credits, the trial court asked whether the parties had "any comments on my math or analysis." Defense counsel responded, "No, your Honor. Thank you."

B.

Section 667.6 allows for full consecutive sentences for convictions of specified sex offenses, including those charged here in counts one and two. Subdivision (d) of section 667.6 provides that full consecutive sentences are mandatory "if the crimes involve separate victims or involve the same victim on separate occasions." Section 667.6, subdivision (c) provides that such sentences are discretionary "if the crimes involve the same victim on the same occasion." In that circumstance, the trial court must state a reason for imposing consecutive sentences and a reason for imposing a full consecutive sentence. (*People v. Belmontes* (1983) 34 Cal.3d 335, 347.) "A decision to sentence under section 667.6, subdivision (c) is an additional sentence choice which requires a statement of reasons separate from those justifying the decision merely to sentence consecutively." (*Ibid*.) "The crucial factor . . . is that the record reflect recognition on the part of the trial court that it is making a separate and additional choice in sentencing under section 667.6, subdivision (c)." (*Id*. at p. 348, fn. omitted.)

"Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to 'sentencing decisions made in the exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its discretionary authority cannot exercise its informed discretion." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) "Remand for resentencing is not required, however, if the record demonstrates the trial court was aware of its sentencing discretion. [Citations.] Further, remand is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion. Error may not be presumed from a

13

silent record.  [Citation.]  ' "[A] trial court is presumed to have been aware of and followed the applicable law." ' " (*Id*. at pp. 1228-1229.)

Under these principles, we conclude that a remand for resentencing is required. As an initial matter, we disagree with the People that Tribbey-Braggs's challenge to his sentence was forfeited when defense counsel failed to object to the trial court's imposition of full consecutive sentences.  Tribbey-Braggs's challenge is not to the manner in which the trial court exercised its discretion or to its failure to give a statement of reasons.  (See *People v. Scott* (2015) 61 Cal.4th 363, 406.)  Rather, he asserts that the trial court misunderstood the scope of its discretion under section 667.6.  Given these circumstances, we decline to find forfeiture.  (See *People v. Panozo* (2021) 59 Cal.App.5th 825, 840.)

In the trial court, the probation report and the prosecution requested sentencing under section 667.6, subdivision (c).  And in this court, the People argue that the trial court did, in fact, sentence Tribbey-Braggs under that provision.  The trial court nevertheless reasoned that "full consecutive" was "require[d]."  As explained above, that is not correct:  under subdivision (c), full consecutive sentences are *discretionary*, not mandatory.  Given this record, we cannot presume the trial court was aware of its discretion under the statute.

The People argue that the trial court could properly have sentenced Tribbey-Braggs to full consecutive sentences under section 667.6, subdivision (d) because of the temporal separation between counts one and two.  It is true, as the People observe, that the trial court noted that the crime involved "a series of assaults over a period of time" and that "[t]here was a break between each of the incidents that would have allowed the defendant to change his mind and discontinue the conduct."  But those statements were made in the context of the court's selection of the upper term on count one and the middle term on count two.  We do not read the statements to mean that the trial court was sentencing Tribbey-Braggs under section 667.6, subdivision (d).  And even if the trial

14

court *could have* decided to sentence him under section 667.6, subdivision (d), the record does not " 'clearly indicate[]' " it would have done so, and we must therefore remand the case for resentencing. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

## DISPOSITION

The sentence is reversed, and the matter is remanded for resentencing. The judgment is affirmed in all other respects.

                  /s/_____
                  FEINBERG, J.

We concur:

/s/_____
KRAUSE, Acting P. J.

/s/_____
BOULWARE EURIE, J.